5558. ELBERT COUNTY _v._ BROWN.

1. The cost of transportation may be a material factor in determining the value of an article; and the importance of this element is enhanced in proportion to the difficulty and expense necessarily incident to the trans-

NOTE. See footnote on page 817, ante.

portation. Consequently, in an action against a county for the value of certain stone, the property of the plaintiff, alleged to have been appropriated by the county to its own use, a paragraph of the petition, alleging that the cost of quarrying and hauling the stone was $50, and that by reason of this it was worth to the plaintiff $50 more than the market value, was not subject to be stricken on oral motion, although the paragraph may have contained defects subject to appropriate and timely special demurrer. An oral motion to strike performs the office of a general demurrer, and is ineffectual unless the pleading against which it is directed as a whole is fatally defective.

2. An exception to the court's refusal to award a nonsuit will not be considered, where the case has proceeded to verdict, and the defendant excepts to the verdict as without evidence to support it; for the latter exception presents for review the sufficiency of all the evidence adduced upon the trial.

3. The court did not err in admitting in evidence the plaintiff's original petition, with the entry of filing and service thereon; for the bringing of the suit within 12 months from the time of the appropriation of the property was a sufficient presentation of the claim, within the meaning of section 411 of the code.

4. The Court of Appeals will not invoke instruction from the Supreme Court upon a point which, in the opinion of this court, has been plainly and unequivocally passed upon by the Supreme Court; nor ask that a ruling of the Supreme Court be reviewed by that court because counsel contends that it conflicts with other rulings, when, in the decision in question, the rulings which he insists are in conflict therewith have been specifically referred to, analyzed, and distinguished.

5. One's right to recover the value of his property is not affected by the fact that he purchased it for much less than its value, nor is his property right diminished or the value of his property to be depreciated by the fact that his title was obtained by gift.

6. A county is liable for the value of any private property, taken by an agent acting under general authority of the officer or officers charged with the management of the county affairs and the work of its public roads, which was needed to improve such roads and which was in fact so used.

7. The fact that the county commissioners, with knowledge that their agent charged with the working of the roads had negligently or by mistake taken private property without compensation and had used it in improvement of a public road, nevertheless retained possession of the property will authorize the inference that they ratified the original taking, and will render the county liable for the value of the property so taken. The right to compensation under the constitutional provision, that "private property shall not be taken, or damaged, . . without just and adequate compensation being first paid" (art. 1, sec. 3, par. 1) is not controlled by the ordinary rules governing rights ex contractu and ex delicto, but, being paramount in its nature, is enforceable regardless of technical classification, and the value of property taken by one authorized to act for the county, and used for the benefit of the county, may be recovered, whether the taking was wrongful or was by virtue of a contract, express or implied.

8. The constitutional provision requiring payment of "just and adequate compensation" for private property taken for public use does not restrict the owner's recovery to market value; and "just and adequate compensation" for property which the owner has designed for a special use, and of which he has been deprived for the public benefit without his consent, may include the cost or value of the article to the owner for the purposes for which he designed to use it.

DECIDED JANUARY 20, 1915.

Action for damages; from city court of Elberton—Judge Grogan. February 23, 1914.

*Z. B. Rogers,* for plaintiff in error.

*Pulliam Proffitt,* contra.

RUSSELL, C. J.   Brown sued Elbert County for the value of certain rock alleged to have·been taken by the county and applied to its use in repairing public roads of the county.   He sued for $175 and recovered $75.   The county excepts to the overruling of an oral motion to strike the ninth paragraph of the plaintiff's petition, to the refusal to grant a nonsuit, and to the overruling of its motion for a new trial.   On the trial the plaintiff proved that he had gathered a large quantity of stone for building purposes from the land of one Maddox, and had hauled the stone a mile to his land preparatory to using it in the erection of a home and necessary outbuildings.   He would procure as large loads of suitable rock as could be pulled over Maddox's land and carry them to the public road, and then return for a second load, and thereupon haul both loads in one on the firmer traveled public road to his land.   In this manner he had selected and assembled 25 unusually large two-horse loads of such stone as he desired to use in the improvement of his premises.   The county warden who was in charge of the repair of the roads in Elbert county (acting, perhaps, under misapprehension as to the direction given him by the county commissioners, as to procuring stone) sent the county's teams and convicts for the plaintiff's stones and took them and used them to repair a near-by public road.   The plaintiff, on hearing that his selected building material had·been taken by the county, made complaint to the chairman of the county commissioners, who did not affirm or deny his oral claim for payment, or orally ratify or condemn the act of the county warden.   The plaintiff did not otherwise present any claim for damages to the county authorities, but filed the present suit within a few days after the stone was taken from him.   Over objection, the court allowed proof as to the cost

of the collection and hauling of the stone, as a peculiar element of value in this case, and also permitted testimony in behalf of the plaintiff as to the special purpose to which he intended to put the stone. The point was also made that the plaintiff was not entitled to recover because the county was not liable for a tort committed by one of its agents, but there was ample evidence to show that all work done by the county warden was under the general supervision and control of the county authorities, and it appeared that the stone taken from the plaintiff was never returned to him by the county authorities after they were fully cognizant that it had been taken and used in repairing the road, and although the point where it was used was only a short distance from the place on his farm from which the stone was taken. The defendant introduced testimony in conflict with the plaintiff's evidence as to the material facts to which we have referred, but the probative value of this testimony was concluded by the finding of the jury.

1. We will deal first with the assignment of error directed to the ruling upon the defendant's oral motion to strike the ninth paragraph of the plaintiff's petition; for the ruling on this point was in a sense conclusive upon the merits of the petition as a whole. As a general proposition it is well settled that a county is not liable for the torts of its agents when the act committed was ultra vires, or when the act was within the scope of the agent's authority but was performed in a manner violative of law. However, the compensatory provision that "Private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid," embodied in article 1, section 3, paragraph 1, of the constitution (Civil Code, § 6388) is not strictly controlled by the same measure of damages as is applied when the compensation sought arises either ex contractu or ex delicto. The constitutional mandate is paramount to all legislative enactments, and the provision to which we have referred is self-enforcing, at least to the extent that the owner of private property must be compensated where it appears that his property has actually been taken and used for the public benefit, and the compensation is not necessarily restricted to the mere market value of the property taken. The word "adequate" sometimes means that which is equal in size or value, but in its primary and more popular significance the concept of sufficiency and proportion so greatly preponderates as almost

to exclude the idea of value abstractly considered and accurately computed; and hence, in the sense in which the term is generally understood, nothing can be said to be "adequate" which is not "equal to what is required, suitable to the case or occasion, fully sufficient, proportionate, satisfactory." Standard Dictionary. An owner can not be adequately compensated for his private property which a county sees fit to devote to the public use (whether it be taken in pursuance of permission by the county or wrongfully and forcibly taken), unless he is paid whatever may be its value to him for the purpose to which he intended to apply it. Under such circumstances "adequate" means an amount proportioned to the effects of the deprivation.

The ninth paragraph of the petition was as follows: "Said stone, at the time and place taken by the defendant, had a value peculiar to your petitioner over and above the market value on account of the fact that he had gathered them up from the land and hauled them about one mile at great expense, and the fact that petitioner has no other stone at or near said building site, but will be forced to haul other stone as he did the first, and at the same expense, to take their place, whereas the county had nothing to do in procuring said rock but to drive to the heap and load them on the wagons and move them about 200 feet to the place it used them in the public road. In other words, your petitioner hauled said rock about two miles at great expense, and the county received the benefit of the labor and expense of bringing the same to the place where the county took and appropriated the same. The cost of quarrying and hauling said stone to the place where the county took possession of the same was fifty dollars, and said stone was worth fifty dollars more to your petitioner than the market value of the same." In any case the cost of transportation may be an element of the worth of the article whose value is the subject of inquiry. It is useless to cite authorities upon this proposition, for it is well known that in the affairs of daily life the freight or carrying charges increase the price of any article that requires to be brought from a distance. But the plaintiff was entitled to more than the mere transportation charges. He testified that he had on his land no rock suitable for the specific purpose to which he intended to apply them. The choice of stone suitable for building purposes was not a matter of haphazard, but required a certain degree of skill. Not only this,

but some of the stone, according to the evidence, required excavation and quarrying. But we go further than this. The plaintiff had the right, if he saw proper, to select odd and peculiar stones for the purpose of erecting a rustic or a fantastic house if he pleased, and to construct a dwelling in accordance with his peculiar fancies, and if this rare and peculiar stone that the builder might have selected was taken by the county, rather than other rock that might have been worth only ten cents a load, to fill a hole in a public highway, it would be no answer to the constitutional requirement that the owner of the peculiar stone should be adequately compensated (that is, placed in the position in which the county found him when it took his property) to say, "We could have gotten other stones just as good for the purpose for ten cents a load, and therefore the value of your stone is only ten cents a load; in other words, the value of your property must be fixed only by what it was worth to us for the purpose for which we appropriated it." Regardless of some of the rules of liability applicable to torts of agents, one whose property is taken for the public use is entitled to be so compensated as to be able, if he wishes to do so, to replace exactly what was taken from him; and, under the express terms of the constitutional provision, it is entirely immaterial whether the taking was wrongful or not. The only questions involved are: Was the property taken? Was it the property of the plaintiff? What was it worth to the plaintiff?

Not only was the ninth paragraph, for these reasons, not subject to be stricken, but, since an oral motion to strike performs only the office of a general demurrer and is ineffectual unless the pleading against which it is directed is wholly defective, the court could not strike the paragraph as a whole; for certainly, under the contentions of the defendant itself, a pertinent allegation as to the market value of the stone was contained in this paragraph. The paragraph contained defects which might have been reached by a special demurrer, but an amendment would not be required in response to a general demurrer.

2. The ruling in the second headnote is a reiteration of frequent rulings of this court and of the Supreme Court. See *Henderson* v. *Maysville Guano Co.,* 15 *Ga. App.* 69 (82 S. E. 588), and citations.

3. The court did not err in admitting in evidence the plaintiff's

original petition, with the entry of service and filing thereon, as proof of presentation of his claim as required by section 411 of the Political Code. The bringing of the suit within twelve months from the time of its appropriation of the property to the public use was sufficient presentation of the claim within the meaning of the code-section cited. We see no difficulty or embarrassment that can be caused the county authorities by the fact that one who has a claim against the county may at his option have his claim presented by the service of a petition seeking to recover the damages. The learned counsel for the plaintiff in error argues that this section and section 4796 of the Civil Code should be construed together, and that it was the plain intention of the legislature to provide that all claims should be presented and passed upon by the county authorities before suit; thus adopting a system by which a county could keep check on its expenditures, etc. Section 4796 empowers the ordinary to audit, allow, and settle claims against the county, and section 410 requires that all claims against the county be audited and properly registered. So far as we can see, there is no reason why a claim against a county may not be allowed as well after suit as before; and if allowed and the claim admitted to be due, the requirements of section 410 would be just as applicable to a claim for which suit had been filed as to one in which a mere claim had been filed. But regardless of our view, the question is foreclosed by the rulings of the Supreme Court in *Dement* v. *De-Kalb County*, 97 *Ga.* 733 (25 S. E. 382), and *Pearson* v. *Newton County*, 119 *Ga.* 863 (47 S. E. 180). In these cases it was held unequivocally that the bringing of a suit within the time limited is sufficient presentation of a claim against a county within the meaning of this section of the code. In *Pearson's* case, supra, it was held that service of the petition would be necessary, to constitute the bringing of a suit and presentation of the claim within the meaning of the statute.

4. Counsel for the plaintiff in error asks that the rulings in the *Dement* and *Pearson* cases be certified to the Supreme Court for review. The constitution provides no way by which the Court of Appeals may seek the instruction of the Supreme Court except by the submission of questions, and these questions are to be submitted only when the solution of a doubt is necessary to the decision of the case before this court. The Court of Appeals will not invoke

instruction from the Supreme Court upon a point which, in the opinion of this court, has been plainly and unequivocally passed upon by the Supreme Court, nor ask the Supreme Court to review a ruling upon the ground that it is erroneous because it conflicts with other rulings, when, in the decision which counsel seeks to have overruled, the rulings which he insists are in conflict therewith have been specifically referred to, analyzed, and distinguished.

5. Exception is taken to the refusal of the court to allow the defendant to prove that the stone in question was given to the plaintiff by Maddox. It is true that in one view of the case the fact that Maddox was giving away stone might indicate that he considered it of small value, but this circumstance is not, in our opinion, of sufficient materiality to require the grant of a new trial. Naturally, other considerations were preponderating and controlling factors in determining even the market value of the stone, for it is undisputed that some of the stone had to be excavated and quarried. All had to be gathered and hauled, and all had been selected for a specific and definite purpose for which the plaintiff designed to use it. Furthermore, the fact that title to property is derived by gift does not necessarily indicate that it is of little value, or not of priceless worth, unless other circumstances illustrative of its value are submitted. The defendant did not offer to prove that Maddox was an unusually stingy man, or state that it expected to prove this; and without some such proof, or some other circumstance that bore upon the gift, the fact that the stone was donated was wholly immaterial. It might have been worth a great deal to Maddox to get the stone out of his field; and for this reason he would have profited by using the gift as means of having them removed, and nevertheless the stone might be very valuable as building stone. One's right to recover the value of his property is not affected by the fact that he may have purchased it for much less than its value; nor is his property right diminished or the value of his property to be depreciated by the fact that his title was obtained by gift.

6. Much is said in the written argument of counsel for the plaintiff in error in regard to the non-liability of the county for the tortious acts of its agents. As we construe the petition, the present action does not seek to recover damages for the tort, but plainly was brought to recover the value of property taken by the county for its

use and for the benefit of the public. Even if a county can in no event be liable for a tort committed by one of its agents in securing property for a public use, the evidence in the present case plainly shows that the agent who took the plaintiff's property was charged by the county authorities with general power and general management and supervision of the work on the public roads in the county, and that he was directed to get stone at a certain place and to use it in repairing the public road. If, misunderstanding the directions of the county authorities, and thinking that the point on the plaintiff's farm where the stone had been stacked was the place where he was directed to get stone, he took the plaintiff's stone through mistake, this would be negligence for which it would seem that the defendant rather than the plaintiff should suffer. The superintendent himself testified, and it was not disputed, that he had general authority to get anything he needed for the road-work. But, regardless of this, we have been unable to find any ruling or intimation in the decisions of the Supreme Court which relieves a county from liability for the value of private property of a citizen which was taken by an agent acting under general authority of the officers having in charge the management of the county's affairs, where the property taken was in fact used by the county, as was the case in the present instance. The decisions upon which the plaintiff in error relies to support the proposition that Elbert county is not liable for the value of the stones taken from the plaintiff's premises and used upon the public road are not in point. They certainly do not support the proposition that the value of one's private property appropriated to the public use can not be recovered if the property was negligently or wrongfully taken from the owner. In *Smith* v. *Wilkes and McDuffie Counties,* 79 *Ga.* 125 (4 S. E. 20), cited for the plaintiff in error, it was held that the counties named were not liable for the damage caused by an obstruction of a stream which resulted from the improper construction of a bridge, but the decision that the county was not liable was expressly based upon the fact that the bridge was not constructed by the counties, but by a bridge-builder, an independent contractor, who built the bridge for the counties under a statutory provision regulating the building of bridges by contractors under bond. In delivering the opinion of the court, Chief Justice Bleckley said, "The action was brought on the theory that the counties had caused this damage; and the

constitutional provision was urged upon us in the argument that property can not be damaged for the public use without compensating the owner. When this constitutional provision applies, it can have effect only against counties which caused the damage; and these counties did not cause any in this instance. They let out the contract to the lowest bidder, and did all that it was incumbent upon the county authorities to do; and as it is manifest that the damage, if any, resulted from the faulty execution of the work, the counties are not responsible, on the simple ground that they did not cause the damage. It is neither the duty nor the right of the counties in their corporate capacity to dictate to the contractor how he should execute his work, provided he obtained the results called for by the plan of the bridge. If, from his negligence or improper conduct in bringing about the results, damage ensued, he is the responsible party and not the counties." It was not decided that the county would not have been liable for damages under the constitutional provision if its duly authorized agents, instead of an independent contractor, had caused the damage. And while the constitutional provision includes both the right to recover damages in case private property is injured but not taken, as well as the right to recover the value of property which may be taken and yet not be injured, there is in practical effect quite a difference between damaging private property and taking it. In the case of *White Star Line Steamboat Co.* v. *Gordon County*, 81 *Ga.* 47 (7 S. E. 231), the Supreme Court held that the county was not liable, because there is no agency recognized by law to represent the county in committing torts of the character with which the court was then dealing. In that case the action was admittedly based upon a tort, but it appeared that the wrong, if any, was the detention of a steamer, and the case went off under the ruling that "the detention of a steamer does not imply a conversion of it, nor any injury or damage done to it." It was further held that the action could not be maintained for the reason that there was "no statutory provision subjecting counties to actions for detaining steamers or craft of any kind upon the water. . . There is no agency recognized by the law to represent the county in detaining steamers and committing torts of this character." In the case at bar it is plain that even if the right to recover from a county the value of property which it has taken for its own use is not a suit sui generis, it is one

in which the tort is waived and the suit is brought as upon a breach of implied contract on the part of duly authorized agents of the county to pay for property purchased by it. In *Bailey* v. *Fulton County,* 111 *Ga.* 313 (36 S. E. 596), the suit was based upon the act of the superintendent of the county chain-gang of Fulton county in confining the petitioner at hard labor in the chain-gang, and the ruling to the effect that the county was not liable was based upon the similarity in principle existing between torts committed by municipal corporations and like torts committed by county officials. In *Nolan* v. *Cobb County,* 141 *Ga.* 385 (81 S. E. 124, 50 L. R. A. (N. S.) 1223), in which the action was brought by a physician to recover the value of his services in performing a surgical operation upon a person in the custody of the sheriff of the county, judgment sustaining a general demurrer was affirmed upon the ground that a county is not liable to suit for any cause of action unless made so by statute (Political Code, § 384), and that there was no law authorizing a sheriff to bind a county under the facts alleged. The language of the decision, however, strongly intimates that there might be a suit upon an implied contract made by the proper authorities. The case of *Talbot County* v. *Mansfield,* 115 *Ga.* 766 (42 S. E. 72), in which it was held that the county was liable for the value of services which by law a county was obliged to perform for a prisoner is cited in *Nolan's* case, but the court did not undertake to decide whether the proper county authorities would have been liable if they had made a contract in behalf of the county before the services, in order to procure the attendance of a physician, nor rule that if, in pursuance of the order of the sheriff set forth in the petition, a warrant had been issued on the treasurer, that warrant could not have been enforced. The court held merely that in the action under consideration the plaintiff was seeking to recover against the county upon the quantum meruit. To the contrary of the view entertained by the plaintiff in error, it was said in *Butts County* v. *Jackson Banking Company,* 129 *Ga.* 801, 807 (60 S. E. 149, 15 L. R. A. (N. S.) 567, 121 Am. St. R. 244) : "It is very generally held that counties and municipal corporations are liable for money had and received by them and applied beneficially to their authorized objects, although the contract by which the money was obtained was unauthorized by law. Allen *v.* LaFayette, 89 Ala. 641 (8 So. 30, 9 L. R. A. 497) ; Salt Lake City *v.* Hollister, 118

U. S. 256 (6 Sup. Ct. 1055, 30 L. ed. 176); Parkersburg v. Brown, 106 U. S. 487 (1 Sup. Ct. 442, 27 L. ed. 238); 1 Dill. Mun. Cor. § 126; 20 Am. & Eng. Enc. L. (2d ed.) 1158; Luther v. Wheeler, 73 S. C. 83 (52 S. E. 874, 4 L. R. A. (N. S.) 746, 121 Am. St. R. 921). The principle of liability rests upon the theory that the obligation implied by the law to pay does not originate in the unlawful contract" (or unauthorized act, as in this case), "but arises from considerations outside of it. The obligation to account for money received by the county and actually devoted to lawful purposes" (and, semble, to pay for property actually devoted to lawful purposes) "rests upon the broad principle of common honesty." In Luther v. Wheeler, supra, Woods, J., after discussing the difference between express contracts and those implied in fact on the one hand, and contracts implied in law, said: "Quasi-contracts, or contracts implied in law, are obligations imposed by law as duties quite independent of the assent of the party held to be bound, and often in spite of his earnest dissent. In an action on an express contract, or a contract implied in fact, the measure of the recovery is ordinarily fixed by the promise. In an action depending on the obligation or duty called quasi-contract, the measure of the recovery is the extent of the duty or obligation imposed by law, and is expressed by the amount which the court considers the defendant has been unjustly enriched at the expense of the plaintiff." It seems to be well settled (as held in Millwood v. DeKalb County, 106 Ga. 743 (32 S. E. 577), and cases there cited), that while, as a general rule, a county is not liable to suit unless there is a law which in express terms or by necessary implication so declares, yet, as pointed out by Presiding Justice Cobb in Terrell County v. York, 127 Ga. 166 (56 S. E. 309), the appropriate law can be found in the constitutional provision that private property shall not be taken for public use without just compensation being first paid. When private property is taken by county authorities or by their duly authorized servant and used for the benefit of the public, a right of action arises in favor of the owner of the property which may be enforced by suit against the county. See also Barfield v. Macon County, 109 Ga. 386 (34 S. E. 596); Smith v. Floyd County, 85 Ga. 420 (2), 423 (11 S. E. 850). In Bailey v. Fulton County, supra, in which it was held that a county is not liable for a tort committed by a chain-gang superintendent in unlawfully imprisoning the plaintiff, the distinction be-

tween a case of that nature and one brought to recover damages for the taking or damaging of private property is clearly pointed out, and the right to recover damages under the constitutional provision is reaffirmed. Furthermore, it is recognized in *Terrell County* v. *York,* supra, as well as in *County of Bibb* v. *Reese,* 115 *Ga.* 346 (41 S. E. 636), that even if the act complained of which had the effect of taking one's private property for public use was not performed in the first instance under the sanction of the county authorities, yet if the county authorities ratified and approved the act of those assuming to represent them, the county would be liable.

7. In the present case the circumstances in proof were sufficient to authorize the jury to find that the county authorities of Elbert county ratified the taking of the plaintiff's building stones. We do not mean to hold that the evidence in the case is not sufficient to have authorized a finding that the county, acting through an agent charged with the power and authority to work the roads, was originally liable for the taking of the stones. We think that even if the moving of the stones in the first instance was by mistake, their being afterwards used was an appropriation by the county of the plaintiff's property for public use, from which resulted a quasi-contract or legal implication of an obligation to pay. What we hold is that if the county commissioners, after knowledge that their agent charged with the working of the roads negligently or by mistake took private property without compensation, and used it in the improvement of a public road, nevertheless retained possession of the property, an inference that the original appropriation had been ratified by the county would be authorized, so as to charge the county with the original taking and impose upon it liability for the value of the property so taken for the public use. As was said by Presiding Justice Lumpkin, in *Bailey* v. *Fulton County,* supra, "Manifestly the framers of the constitution contemplated that counties, in making public improvements, would take or damage private property, and accordingly the constitutional provision above referred to was held to create a right, irrespective of express legislative enactment, to bring an action against a county in such cases." In this view of the case it is immaterial whether the action be considered as ex delicto or as impliedly ex contractu, or whether, the defendant being guilty of a tort, the plaintiff may maintain the action by waiving the tort. Classification of the nature of the action is un-

necessary. The right to compensation which is dependent upon the constitutional prohibition that private property shall not be taken or damaged without just and adequate compensation being first paid is not controlled by the ordinary rules governing rights ex contractu and ex delicto, but, being paramount in its nature, the constitutional right is enforceable regardless of any technical classification of the remedy to be pursued, and the value of the property taken for public use may be recovered without regard thereto, provided the property was taken by one authorized to act for the county and was used for the benefit of the county. This is true whether the property was wrongfully taken or whether it was taken by virtue of a contract, express or implied.

8. We have already adverted to the measure of recovery as included within the words "just and adequate compensation." We have also pointed out that in some instances one might not be justly compensated for the taking of his property unless he was awarded an amount adequate to repay the cost of the particular property or to replace just such property as was taken from him; and hence it is only necessary to say, in regard to the rulings and charge of the trial judge upon the measure of damages of which complaint is made, that· the constitutional provision providing adequate compensation for private property taken for public use does not restrict the owner of the property to a recovery of the market value. Adequate compensation for property which the owner has designed for a special use, and of which he has been deprived for the public benefit without his consent, may include the cost of the article or its value to the owner for the particular purpose for which he designed to use it, or for which it could be used. *Atlantic Coast Line R. Co.* v. *Postal Telegraph Co.,* 120 *Ga.* 268, 280, 281 (48 S. E. 15, 1 Ann. Cas. 734) ; *Harrison* v. *Young, 9 Ga.* 359 ; Broom Company *v.* Patterson, 98 U. S. 403 (25 L. ed 206).

There was no material error in the trial, and the trial judge did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, J., not presiding.*