23760. CALHOUN *v.* WILLIAMSON *et al.*

DECIDED MAY 29, 1934.

A. S. Bradley, Felix C. Williams, for plaintiff.
Guy Alford, I. W. Rountree, Price & Spivey, for defendants.

MacINTYRE, J. B. S. Calhoun· sued Clarissa Williamson and A. L. Powell, administrator of the estate of W. W. Williamson, on a promissory note, said note being for the principal sum of $406.56, dated October 17, 1912, due January 1, 1913, payable "to the order of A. D. Coleman, Chairman," and signed, "Clarissa Williamson, H. R. Williamson, W. W. Williamson." On the back of the note was the indorsement, "A. D. Coleman, Chairman." H. R. Williamson being dead, and no administrator having been appointed on his estate, only the two defendants mentioned were sued. A jury having returned a verdict for the defendants, the plaintiff made a motion for a new trial, which was overruled, and he excepted.

The first question to be passed upon is whether or not the court erred in overruling the plaintiff's motion to dismiss certain paragraphs of the defendants' answers. The petition, which was in the usual form, alleges that the plaintiff purchased the note declared upon for value before maturity, and without notice of any equities between the maker and payee, and that he was the lawful owner and holder thereof. The defendants filed separate answers. In her answer Mrs. Clarissa Williamson admitted a prima facie case, denied that the plaintiff was a bona fide holder of the note, and pleaded payment. She further pleaded, by paragraph, as follows:

13. When the note declared upon was given, "this defendant . . was indebted by reason of having received an overpayment for a right of way through lands for the Georgia & Florida Railroad; . . in order to settle the indebtedness, she gave her note to A. D. Coleman, who was acting as chairman of the committee that was obtaining the right of way, for the amount of the overpayment, and H. R. Williamson and W. W. Williamson signed . . as sureties on her note; . . A. D. Coleman immediately indorsed said note to the Citizens Bank of Swainsboro, signing his name on the back thereof, 'A. D. Coleman, Chairman;' . . on the maturity of the note the same was sent to the Farmers Bank of Glenwood, Georgia, for payment, the Citizens Bank of Swainsboro indorsing said note with its stamp for that purpose; and . . upon presentation . . the same was paid on January 3, 1913 . . ."

14. At the time of this transaction and prior thereto, and since, B. S. Calhoun, defendant's brother, "was her financial agent and handled her affairs;" soon after the estate of her husband was wound up said agent "took over in her behalf and for her benefit approximately $9000 in cash and notes, the cash to be reinvested, and the notes to be collected and reinvested or loaned . . ;" and "at the time the note in suit matured, this defendant had ample funds . . in the hands of the plaintiff to pay said note, and she directed the plaintiff to pay the same out of her funds, and this the plaintiff informed this defendant he did, and upon being requested to send the note to exhibit to H. R. Williamson and W. W. Williamson, her securities, . . the plaintiff sent this defendant a receipt showing that said note had been paid . . "

15. No demand was ever made on H. R. or W. W. Williamson to pay any part of said indebtedness, and no demand was made on the defendant until both said securities were dead, and, "subsequently to the maturity of said note, to wit, on January 1, 1915, the plaintiff included in a note all the indebtedness that he claimed against the defendant, the note being for . . $1393.05, and said note was fully paid and satisfied on September 1, 1916.

16. While still acting as her financial agent, in 1917 or 1918, plaintiff sold defendant's place in Vidalia, Georgia, for $3000 and borrowed from her $1500, "which he finally repaid without mentioning the indebtedness sued upon; and at no time has . .

plaintiff claimed to own said indebtedness until this defendant was approached by said B. S. Calhoun just prior to the levy that was made on the property of Clara Williamson, in the hands of J. A. Ogburn as sole heir, and tried to induce this defendant to join with him in defrauding the said J. A. Ogburn out of the interest that he would inherit from his wife, and when this defendant refused to enter into the scheme and connivance to rob and defraud J. A. Ogburn, then . . the plaintiff has undertaken to collect from this defendant this and other notes which he paid with her money, and which she does not . . owe."

17. "Even as late as 1927 . . the said B. S. Calhoun, still acting as her financial agent, and being the administrator of the estate of this defendant's sister, Martha Calhoun, collected in her behalf $1159 and accounted for the same to this defendant by taking up a fi. fa. of Vidalia Chemical Company, which he had transferred to Maggie Williamson, by paying S. R. Williamson $180 on an old fi. fa. which had been transferred to him and which originally issued in behalf of W. W. Williamson, administrator, and then paying to this defendant the balance in cash, and in none of the transactions did the plaintiff claim any right, title, or interest in the note sued on until the Ogburn matter, mentioned above."

A. L. Powell, as administrator of the estate of W. W. Williamson, filed an answer that is so similar to that of Mrs. Clarissa Williamson that we shall not incumber the case by setting it out. As stated in the brief of counsel for the plaintiff in error, the material matter in this case is the plea of payment. The motion to dismiss is aimed at this plea, and the numerous exceptions to the court's rulings upon the introduction or rejection of evidence, which are excepted to, bear upon it.

We quote from the record as follows: "To the answer of the defendant, Clarissa Williamson, the plaintiff moved to strike paragraphs 13, 14, 15, 16, and 17 as being insufficient in law as a plea of payment or settlement, or as alleging any real defense as against the note sued on. The plaintiff further demurred to and moved to strike all of the allegations of both of the pleas aforesaid . . on the ground that the allegations contained therein were irrelevant and immaterial, and only relevant and material matter could be illustrative of conduct. To said motions of the plaintiff the court then and there ruled: I will sustain the motion to strike the

special plea of the administrator as to the plea of increased suretyship, and confine the case on both answers to the plea of payment."

"An oral motion to strike performs the office of a general demurrer, and is ineffectual unless the pleading against which it is directed as a whole is fatally defective." *Elbert County* v. *Brown,* 16 *Ga. App.* 834 (86 S. E. 651). The motion to strike, made at the trial term of the instant case, does not reach formal and amendable defects in the pleas. *South Carolina and Georgia R. Co.* v. *Augusta So. R. Co.,* 111 *Ga.* 420, 425 (36 S. E. 593), and citations. Upon special demurrer, a plea of payment is bad, unless it alleges when, how, and to whom payment is made. *Kahrs* v. *Kahrs,* 115 *Ga.* 288 (41 S. E. 649). But there was no special demurrer in this case. As against a general demurrer or an oral motion to dismiss, made at the trial term, upon the ground that no defense is set forth, a plea of payment is good which alleges in distinct terms that the defendant has paid to the plaintiff in cash or its equivalent the full amount of the note sued on. *Prince* v. *Cochran,* 10 *Ga. App.* 495, 496 (73 S. E. 693). The motion to strike any paragraph of the pleas in the instant case is ineffectual if any portion of the paragraph is good. *Epslein* v. *Thomas,* 15 *Ga. App.* 741, 746 (84 S. E. 201). Under the foregoing rules, it is evident that the court properly overruled the motion to strike paragraphs 13 and 14 of Mrs. Williamson's plea and answer. Paragraphs 15, 16, and 17 of said plea and answer are pertinent as bearing upon the question of the probability of payment. In the case of *Norton* v. *Aiken,* 134 *Ga.* 24 (67 S. E. 425), the rule is broadly stated in this language: "Any circumstance which tends to make the proposition of payment more or less probable may be considered by the jury." This rule was followed in *Tumlin* v. *Guest,* 31 *Ga. App.* 250 (2) (120 S. E. 442). See also *Milledge* v. *Gardner,* 33 *Ga.* 397 (2). Before concluding this branch of the opinion, we deem it proper to quote the first headnote of *Fletcher* v. *Young,* 10 *Ga. App.* 183 (73 S. E. 38), as bearing directly upon the motion to dismiss paragraph 15 of Mrs. Williamson's answer. It is as follows: "The execution of a promissory note is evidence of a full settlement of all debts up to the date thereof, except such as are specifically excepted at the time; and where the maker sues the payee for a debt alleged to have been due before the execution of the note, the giving of the note to the payee is presumptive evi-

dence that he had paid the debt to the maker before or when the note was executed. This presumption can be rebutted." The authorities cited apply also to the motion to dismiss the pleas filed by A. L. Powell, administrator. We hold that the court's ruling upon the motion to dismiss was correct.

It appears from the first special ground of the motion for a new trial (numbered 4) that on cross-examination the plaintiff was allowed to testify that he was the brother of Mrs. Clarissa Williamson, and that he was surety on her bond as guardian; also that in replying to counsel's question as to whether he "took over the management of her funds" by reason of "being surety on her bond," the plaintiff answered: "I did not." The ground recites: "The objection then and there urged to the admissibility of such testimony being that it was irrelevant, immaterial, and not in accordance with any fact pleaded." The gist of the assignment of error is that "such testimony" was harmful "for the reason that by this question and the long series of questions admitted by the court, the defendant was permitted to inject into the case testimony to the effect that about . . 1905 the plaintiff had been one of the sureties on the bond of Mrs. Williamson, and that he had at that time, and subsequent thereto, handled large sums of money of the guardian, all of the testimony being vague and indefinite as to dates and places and amounts, and being a general effort to becloud the issue. . . " The evidence itself appears innocuous, and how it produced the dire effects stated in the assignment of error does not appear. "The long series of questions admitted by the court" do not appear in the ground and can not be considered. The plea avers that the plaintiff was Mrs. Williamson's brother, and that as her financial agent he had been handling her business for a long time. We hold that the assignment of error was properly overruled.

It appears from special ground 5 that counsel was permitted to ask the plaintiff on cross-examination: "Why, knowing that Clarissa Williamson was insolvent, the estate of H. R. Williamson was solvent, and the estate of W. W. Williamson was solvent, you made no demand upon either of these estates for payment, and waited until forty days before the note went out of date?" The ground recites that the witness answered that he had not filed a claim with the administrators of either estate, but that "he had told the ad-

ministrator of W. W. Williamson's estate about a year before the suit about his holding the note." The testimony appears to be admissible under paragraph 15 of Mrs. Williamson's answer. Furthermore, it had some bearing upon the probability of payment. See *Norton* v. *Aiken,* supra; *Tumlin* v. *Guest,* supra. The ground discloses no error.

It appears from special ground 6 that the court permitted the plaintiff to testify on cross-examination that "he had purchased the life estate of Mrs. Clarissa Williamson in the property for his daughter, Onie Williamson, for a consideration of $750, as evidenced by the deed made to her by Mrs. Williamson in January, 1921, which was introduced in evidence." The objection to the evidence was that there was no pleading to support it, and that "there were other suits pending between the parties, and this fact regarding the rental of the tract of land had been treated as a matter of payment to the other suits." In view of the quoted statement in the assignment of error, we conclude that the rent from the tract of land referred to was to be applied in some way, and we do not think it would have been harmful error to allow plaintiff to testify in regard to the matter on cross-examination. However, he did not do so. It also appears that the deed to the property had been introduced in evidence. We hold that this ground shows no reason for reversing the judgment.

Special ground 7 complains of the rejection of certain documentary evidence which is not set out literally or in substance in the ground or attached thereto as an exhibit. This ground presents nothing for adjudication. *Shaw* v. *Jones,* 133 *Ga.* 446 (9) (66 S. E. 240); *Citizens Auto Co.* v. *State of Georgia,* 35 *Ga. App.* 166 (2) (132 S. E. 258).

The gist of special ground 8 is that the court permitted the witness Margaret Williamson, sworn for the defendants, to testify on cross-examination in effect that Mrs. Clarissa Williamson made a certain "sham" deed covering her life estate in one hundred acres of land to the plaintiff's daughter, and that the plaintiff's daughter "was to use the land, and the proceeds were to go on the debts." The objection was that the evidence sought to vary the terms of a written deed duly signed and delivered and engraft upon the deed a parol agreement. Since the contents and conditions of the deed referred to are not set out in the ground, the question sought to be

raised can not be intelligently determined. We hold that this ground discloses no reversible error.

The ninth, and last, special ground concerns the same deed referred to in the preceding ground. It appears that a witness for the defendants was allowed to testify that the purported $750 consideration stated in the deed was never paid; that in fact there was no consideration for the deed, except that the "proceeds of this place should go on the indebtedness until plaintiff could get these monies out of the place." The objection was that the defendants were "seeking by parol evidence to engraft on the conveyance . . a parol agreement," and that the evidence formed the basis of a mass of irrelevant testimony. The "mass of irrevelant testimony" referred to was not set out in the ground. We hold that the ground shows no cause for reversing the judgment.

A careful reading of the long brief of evidence in this case discloses that the evidence is in sharp conflict, and that a verdict for either the plaintiff or the defendants would have been warranted. In this situation this court can not hold that the trial judge erred in overruling the general grounds of the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*