## 41007. HOUSING AUTHORITY OF THE CITY OF ATLANTA v. TRONCALLI.

516

*King & Spalding, R. Byron Attridge, Charles M. Kidd,* for plaintiff in error.

*Ernest H. Stanford,* contra.

Russell, Judge. The court, after three times stating that market value is the measure of damages in a condemnation case, charged that if the jury should find from the evidence "that this property has some unique or special use to the owner or to his benefit, so that fair market value that would ordinarily be realized on the 'sale of property would not afford just and adequate compensation for the owner for the taking of this property, then in that event you would determine what constitutes just and adequate compensation without restricting yourself to the market value of the property so taken, that is, the market value as such." That the charge is proper when supported by evidence that the property has a unique pecuniary value to the owner which could not be realized on the open market, is supported by *Fulton County v. Cox,* 99 Ga. App. 743 (109 SE2d 849); *Polk v. Fulton County,* 96 Ga. App. 733 (4) (101 SE2d 736); *Georgia Power Co. v. Pittman,* 92 Ga. App. 673 (89 SE2d 577); *Housing Authority of Savannah v. Savannah Iron &c. Works,* 91 Ga. App. 881 (87 SE2d 671); *Housing Authority of Augusta v. Holloway,* 63 Ga. App. 485 (11 SE2d 418); *Atlantic C. L. R. Co. v. Postal Tel. Co.,* 120 Ga. 268, 280 (48 SE 15, 1 AC 734); *Elbert County v. Brown,* 16 Ga. App. 834 (8) (86 SE 651). But this instruction is beset with pitfalls and has caused reversal where the appellate court determined there was no evidence to support the proposition that actual market value as determined by the willing-seller, wanting-buyer yardstick would not suffice. It is cause for reversal where there is no evidence of unique value to the owner, *State Hwy. Dept. v. Thomas,* 106 Ga. App. 849 (128 SE2d

520), but not where the evidence shows the property has some unique and special value to him alone. *Fulton County v. Cox,* 99 Ga. App. 743 (2), supra. It must show unusual circumstances "which would make an appreciable distinction," *Georgia Power Co. v. Pittman,* 92 Ga. App. 673, 676, supra, and is proper where the jury is not "bound to find" that two measures coincide, *State Hwy. Dept. v. Robinson,* 103 Ga. App. 12, 15 (118 SE2d 289). The evidence should show that the value to the owner theory is applicable. *State Hwy. Dept. v. Cochran,* 108 Ga. App. 61 (2) (131 SE2d 802).

The evidence to authorize a jury instruction need not be substantial or direct; it is enough if there is even slight evidence consisting of inferences drawn from the testimony. *Harper v. Hall,* 76 Ga. App. 441 (2) (46 SE2d 201); *Bowie Martin, Inc. v. Dews,* 73 Ga. App. 73 (1) (35 SE2d 577). This is true even though the great preponderance of evidence tends to show that a supposed state of facts does not exist. *Hawkins v. State,* 80 Ga. App. 496 (2) (56 SE2d 315). There is sufficient testimony coming from one of the condemnor's witnesses to authorize a jury inference that in the present case an owner-value approach to valuation would be different from a market-value approach. Strictly speaking, there are three recognized techniques for determining market value: replacement cost new less depreciation, income, and comparable sales. The appraiser was undoubtedly discussing these methods in arriving at the two valuations he gave, but he referred to one of them as value to the investor and the other as value to the owner. He "estimated what it would be worth as an income property . . . to a buyer to buy it and to use it, and also considered what it would be worth to the present owner, the top value it could be worth to the present owner." The values resulting from the two methods were different. The witness then explained that the difficulty was that the land was located in a heavy traffic area surrounded by large enterprises, and was high priced. The building on it used as a garage did not represent an improvement in accordance with the nature of the land because of its small size. There were not many garages in the area, and the witness did not know of another garage built like that one.

Thus, from the testimony of the condemnor's assessor it appears that it would be difficult to duplicate the property in anything like a comparable location. As to this the condemnee testified: "I would say it is one of the best [locations for the business], it is as close as you could get into town. I am only three blocks from the Candler Building, you can leave your car there, park it, have the work done, go to town and come back. It is in walking distance and a location like that is hard to find." He also testified that a move would ruin his business, and "I have been looking all over town trying to find a comparable location that I could buy. I haven't been able to touch anything with what they have offered me. So, I was just hanging on to a sinking ship, you would say, there." The reason why no comparable property could be found comes out clearly in the testimony of the condemnor's appraiser that ordinarily such property would be put to a more expensive use from the standpoint of buildings and fixtures, and from other testimony that the land was in a heavy traffic area surrounded by large enterprises and was high priced. The owner was running a tune-up and brake shop, and it cannot be assumed that his was a primarily transient business; in fact, he testified that the move (presumably to a location farther out, where he would lose the advantage of being within walking distance of large office buildings) would ruin his business. Every person who has an established business or even a residence in a location which cannot be duplicated within the immediate area suffers a loss which is particular and unique to him and not shared by members of the general public dealing in such property and buying and selling it for profit. Market value is not necessarily just and adequate compensation to them, for market value presupposes not only a buyer willing to purchase but a seller willing to sell. If the property must be duplicated for the business to survive, and if there is no substantially comparable property within the area, then the loss of the forced seller is such that market value does not represent just and adequate compensation to him.

Troncalli, the condemnee, testified that he personally built the building on a lot which he had purchased at a very reasonable cash outlay from an estate; that he personally handfitted the

buttresses on the corner posts and put in sliding, disappearing doors; that he rented out some of the parking spaces and turned over the transmission repair business to a younger man who leased some of the space in order to take care of the automatic transmission work for him. Asked if it was a good location for his business, he replied, "I would say it is one of the best, it is as close as you could get into town. I am only three blocks from the Candler Building, you can leave your car there, park it, have the work done, go to town, and come back. It is in walking distance and a location like that is hard to find." He testified that in his opinion the value of the property was $45,000 because, "I base that on the property and the building, the improvements that I have put in it at $43,000. One thousand dollars I would say for moving, because I have hydraulic lifts that are imbedded in the cement and all, and $1,000 to say to get started into a business again. . . I have gone as much as three or four miles out and I still can't find anything. . . I looked at one on Courtland Street [a block away] and it was only 50 feet, and the man asked $60,000 for it. . . It is a case of having to find a place of business to replace the business. After you get 58 years old, you don't get a job, nobody will give you a job. I have got to find a place." He was then specifically asked, "And the value of this property to you, in your opinion is how much?" to which he replied $45,000. It is true that on cross examination opposing counsel asked him what the market value of the property was in his opinion and he replied with the same figure, but this by no means demands the conclusion that he considered the value to himself and the market value as being the same thing. Everything he said showed him to be a garage man without legal training who had personally built a building and worked up a business that (again in the language of the condemnor's witness) *was worth more to him than to the ordinary investor.* The inference is explicit that this particular use, with this particular building and business, is unique to this particular man. His statement, in fact, was: "Well, just to be truthful about it, get down to the fact, I wouldn't sell it for 45 [$45,000] if I was on a free market."

It is contended that the "unique value" theory should be nar-

rowed so as to become applicable only if (a) only one person in the world could or would want to put the property to the use in question, and (b) no other property in the world would be equally suitable for that use. Such a situation may, at some time or place, have existed, but no example of it comes readily to mind. A merely aesthetic or sentimental value is not sufficient. The value must be pecuniary, but that pecuniary value, as to a certain piece of property in regard to its present use, may well be unique to the present owner, in a situation where he can find no other property equally well suited and there is no taker on the open market at the pecuniary value of the property to him. In such a case there *is no* market value, which presupposes a willing-buyer willing-seller situation. As stated in *Housing Authority of Sav. v. Savannah Iron &c. Works*, 91 Ga. App. 881 (3), supra: "The measure of damages for property taken by the right of eminent domain, being compensatory in its nature, is the pecuniary loss sustained by the owner, taking into consideration all relevant factors. Ordinarily this loss is represented by the fair market value of the property interest taken, but it may be the fair and reasonable value of the property taken if in fact the market value would not coincide with the actual value thereof." No other measure except the loss *sustained by the owner* can in these circumstances measure up to the constitutional requirement of "just and adequate compensation." The instruction in this case, which has been approved in many cases cited, supra, is merely that if the unique or special use to the owner is such that fair market value would not afford just and adequate compensation to the owner, then the jury may consider what would afford just and adequate compensation without restricting themselves to market value *as such*. If there is a pecuniary value to the owner not shared by enough members of the general public to create an equivalent value in the open market, the jury must, in assessing damages, ask themselves what a just and adequate monetary compensation to the owner would be. Any instruction less than this, under the evidence in this case, would in the opinion of the majority be a failure to measure up to constitutional provisions.

In any event, of course, the instruction viewed from the stand-

point of the verdict was of no consequence. If it be assumed that the condemnee considered market value and value to him separately, he is in the position of seeking to recover $45,000 in in either event. If under the testimony of the condemnor's witness Matthews there was a difference, then the value to the owner was $26,200 and the market value was $24,500. The jury, however, returned a verdict for $37,250, so it obviously considered either or both of Matthews' estimates too low, just as it considered the condemnee's valuation too high. There was no other testimony as to value to the owner, but there was testimony fixing market value at $23,600, $41,500 and $43,000. This court construes Troncalli's testimony to mean that the property had a higher value to him than the market value of the property. If this is correct, the instruction given was necessary under the evidence. If incorrect, then the jury could only have found under Troncalli's testimony that market value and value to him coincided, so any error would be harmless. As to Matthews, the witness for the condemnor, this witness definitely placed the value to the investor or market value as less than the value to the owner, but, if we are wrong in this, the error is again harmless since the verdict returned was without question based on estimates of market value.

The trial court did not err in overruling the motion for a new trial.

*Judgment affirmed. Felton, C. J., and Nichols, P. J., concur. Frankum and Pannell, JJ., concur in the judgment. Bell, P. J., Jordan, Hall and Eberhardt, JJ., dissent.*

HALL, Judge, dissenting. The condemned property, near the intersection of Houston and Butler Streets in the City of Atlanta, had a frontage of 68.15 feet on Houston Street and other dimensions of 135.7 feet, 64 feet, and 149 feet; it was improved by an automobile repair garage building. The condemnee testified that he operated a tune-up and brake shop on the property, leased a portion of the building for $200 a month, and rented a limited number of parking spaces from which he received about $40 a month; and that he had been unable to find a comparable location for the business for the price offered by the condemnor. "I would say it is one of the best [locations], it is as close as

you could get into town. I am only three blocks from the Candler Building, you can leave your car there, park it, have the work done, go to town and come back. It is in walking distance and a location like that is hard to find." In his opinion the value of the property to him was $45,000, and the market value of the property was $45,000.

A witness for the condemnor, an expert in real estate appraisal, testified: "In appraising this property, I went and examined the property and measured it up and estimated its replacement cost, estimated the value of the land, estimated the rents, estimated what it would be worth as an income property and I estimated what it would be worth to a buyer to buy it to use it and also considered what it would be worth to the present owner, the top value it could be worth to the present owner." This witness testified that the fair value of the property at the time of condemnation was $26,200—"the depreciated replacement value which would be a value to a user or a value to the present owner . . . as much as a user would be justified in paying for it and in my opinion that is as much as it is worth to the present owner." And "the figure that I arrived at as an income property was something less than that. . . On account of the nature of that property, a few things peculiar to it, it wouldn't appeal to too many investors and based on what I estimated it would rent for, I think the highest price that an investor would pay for that property would be around $24,500 based on what I think it would bring in net . . . it probably wouldn't appeal to an investor as much as it would to a user . . . because of the particular situation at that point." This testimony shows that in the opinion of this witness the market value of the property was $26,200 based on its highest and best use, and not the lower figure which he stated as the value to an investor; his opinion of market value was the same as his opinion of the value to the owner.

Three judges of this court have agreed upon the following concept of unique value to the owner, found in the opinion written by Judge Russell: "Every person who has an established business or even a residence in a location which cannot be duplicated within the immediate area suffers a loss which is particular and

unique to him and not shared by members of the general public dealing in such property and buying and selling it for profit. Market value is not necessarily just and adequate compensation to them, for market value presupposes not only a buyer willing to purchase but a seller willing to sell. If the property must be duplicated for the business to survive, and if there is no substantially comparable property within the area, then the loss of the forced seller is such that market value does not represent just and adequate compensation to him."

Following this concept it is difficult to think of a piece of property that would not be in the class for measuring damages by value to the owner rather than by market value. This view is contrary to several principles that have long been established in condemnation cases, which will be discussed infra.

Under constitutional and statutory provisions requiring just and adequate compensation to the owner for the taking of his property, other standards for measuring value than market value could reasonably have been adopted by the courts. But, for example, the courts have, perhaps unnecessarily, declined to allow special damages for losses to the owner such as expenses of moving. *State Hwy. Dept. v. Robinson*, 103 Ga. App. 12, 15 (118 SE2d 289). The standard of market value has been generally recognized as providing just and adequate compensation, presumably because it provides reasonably reliable evidence of pecuniary value, though it must be established by opinion evidence and is at best difficult to ascertain. Special value to the owner is even more difficult to assess, and the courts have permitted consideration of this measure only in limited cases.

Four Judges of this court, applying the law as we find it, would hold that unless the evidence would authorize a finding that the property had some unique and special value to the condemnee other than, and over and above, fair market value, and that fair market value would not afford just and adequate compensation to the condemnee, the charge complained of was error. *Central Ga. Power Co. v. Cornwell*, 139 Ga. 1 (76 SE 387, AC 1914A 880); *State Hwy. Dept. v. Thomas*, 106 Ga. App. 849 (128 SE2d 520); *State Hwy. Dept. v. Whitehurst*, 106 Ga. App. 532, 534 (127 SE2d 501); *State Hwy. Dept. v. Stewart*, 104 Ga. App. 178, 183 (121 SE2d 278); *State Hwy. Dept. v. Whitehurst*, 109 Ga.

App. 737 (137 E2d 371); *State Hwy. Dept. v. Allen,* 108 Ga. App. 388 (133 SE2d 64); *State Hwy. Dept. v. Weldon,* 107 Ga. App. 98 (129 SE2d 396).

The concept of unique value to the owner is that the property has special value for its owner only and no such value for any successor in title. 4 Nichols on Eminent Domain 71, § 12.22[2]; 18 Am. Jur. 881, 885, §§ 245, 247; 1964 Supp., 138, § 245; accord *Fulton County v. Cox,* 99 Ga. App. 743, 748 (109 SE2d 849); *State Hwy. Dept. v. Thomas,* 106 Ga. App. 849, 853, supra. "The existing use to which the owner of the property is devoting it at the time it is taken by eminent domain may, of course, be considered in determining the market value. . . However, before weight is given to peculiar value to the owner, it must appear, not that the property is peculiar, but that the relationship of the owner thereto is peculiar—its advantages to him more or less exclusive—that is, that it is property having value peculiar to the owner only, and without possible like value to others who might acquire it; property with characteristics of location or construction which limit its usefulness, and therefore, its value, to the particular owner of it, so that these elements of value cannot pass to a third party. The value peculiar to the owner, however, does not encompass sentimental value nor does it justify the allowance of any measures of value by reason of the seller's unwillingness to part with his title." 4 Nichols, Eminent Domain 173, § 12.3141. See Orgel, Valuation Under Eminent Domain 322, § 73 et seq.; 29A CJS 697, § 162. The jury is of course authorized to consider the present and potential uses of the property in arriving at market value. *Harrison v. Regents of the University System,* 105 Ga. App. 817, 819 (125 SE2d 793).

Under the terms of the usual constitutional provision for just compensation, and in the absence of special statutory provisions, it is "well settled that when land occupied for business purposes is taken by eminent domain, the owner or occupant is not entitled to recover compensation for the destruction of his business or the injury thereto by its necessary removal from its established location," or for "the anticipated profits of his business which are lost by the taking of the land upon which it is carried on." 4 Nichols, Eminent Domain 434, 443, 458, §§ 13.3, 13.32; accord *Lee v. State Hwy. Dept.,* 57 Ga. App. 398 (195 SE 462).

The evidence in this case does not meet the criterion the courts have heretofore applied when they have permitted unique value to the user to become the measure of compensation in condemnation cases. When the owner of condemned property must acquire comparable property for his business to survive and no substantially comparable property is obtainable within the area, it is not unreasonable to say that the market value of the property does not afford the owner just and adequate compensation for his loss and that some other measure of damages should be devised to compensate him for the taking of his property. But to hold that in such a case damages may be measured by the value of the property to the condemnee would go beyond our previous decisions as to the character of evidence required to authorize this measure of damages rather than market value.

It appears that the charge complained of could have harmed the condemnor and was reversible error. The opinions of the market value of the property given by the several witnesses were $23,000, $26,200, $43,000, $41,500 and $45,000. The jury returned a verdict for $37,250. We must conclude that the jury rejected the opinions of the three witnesses who gave the highest valuations, but must assume that it reached the verdict in one of two ways: (a) by believing that market value would afford just and adequate compensation and arriving at its own opinion of market value between the witnesses' (market value) valuations of $26,200 and $43,000; or (b) by concluding, considering the court's charge on unique value, that the property had a unique value to the owner such that the market value would not afford just and adequate compensation and arriving at its opinion of market value based on the lower opinions of the witnesses and increasing this figure to provide for just and adequate compensation based on unique value to the owner.

Unfortunately there is no holding of law in this case sufficient to constitute a binding precedent on anyone as to the proper definition of "unique value." Until this question is clarified by a decision of our Supreme Court, the law on this subject will remain in great confusion.

I am authorized to state that Bell, P. J., Jordan and Eberhardt, JJ., concur in this dissent.