### 50455. COOPER v. RICKETTS.

STOLZ, Judge.

The plaintiff appeals from the grant of the defendant's motion for summary judgment.

1. The plaintiff's first five enumerations of error allege the violation of various constitutional rights. The record does not reveal that these attacks were made in the trial court, hence they cannot be considered when raised for the first time on appeal. *O'Kelley v. Skinner, Wilson & Beals,* 132 Ga. App. 792 (3) (209 SE2d 242) and cit.

2. The plaintiff's sixth enumeration of error complains that the trial judge erred in not allowing the plaintiff to enter sworn affidavits in his case to further prove his case to the court. A review of the record reveals that the trial judge did sustain the defendant's motion to strike two affidavits which were attached to the plaintiff's complaint as Exhibits B and C, respectively. The plaintiff did not offer any evidence in opposition to the defendant's motion for summary judgment, including the aforesaid affidavits. The affidavits of possible witnesses for plaintiff were not properly a part of the complaint and were correctly stricken by the trial judge.

3. The defendant warden swore by affidavit that at no time had he "had personal contact with, possession of, or personal control over any of the personal belongings" which are the subject of the plaintiff prisoner's present trover action, and that neither he nor any employee of the Georgia Diagnostic and Classification Center had damaged or caused the loss of, or permitted damage or loss to the plaintiff's personal property. This unopposed affidavit established that he had never had possession of any property belonging to the plaintiff. The transcript reveals the following testimony by plaintiff: "Q. You have no personal knowledge that he took anything? A. No, sir. Q. You don't have any evidence from anybody else that he took anything? A. No, sir." Thus there appears to be

contradiction of the facts set forth in the defendant's affidavit. " '[A]s a general rule, a public officer is not liable under the respondeat superior doctrine for acts or omissions of his subordinates.' 67 CJS 423, Officers, § 128. See *Mathis v. Nelson,* 79 Ga. App. 639, 640 (3) (54 SE2d 710)." *Parris v. Slaton,* 131 Ga. App. 92 (2) (205 SE2d 67). See also *Peavy v. Chavers,* 121 Ga. App. 354 (173 SE2d 749).

*Judgment affirmed. Bell, C. J., Quillian, Clark and Marshall, JJ., concur. Webb, J., concurs in the judgment. Deen, P. J., and Evans, J., dissent. Pannell, P. J., concurs in the result of the dissent.*

SUBMITTED APRIL 9, 1975 — DECIDED JULY 8, 1975.

Selmer L. Cooper, Jr., *pro se.*

*Arthur K. Bolton, Attorney General, Robert S. Stubbs, II, Executive Assistant Attorney General, G. Thomas Davis, Assistant Attorney General, Kirby G. Atkinson,* for appellee.

DEEN, Presiding Judge, dissenting.

1. Personal property, no less than real estate, may not be seized by a governing authority without just and adequate compensation, and where such property is taken by an official *for a public purpose* without prior payment, an action for the value of the personalty is the proper remedy. *Elbert County v. Brown,* 16 Ga. App. 834 (6) (86 SE 651).

2. Where the employee of a governmental subdivision seizes the personal property of another, ostensibly in the process of carrying out his official duties, but in fact illegally and *not* for a public purpose, a trover action against such official is a proper remedy. *Norred v. Dispain,* 119 Ga. App. 29 (166 SE2d 37). "While a suit cannot be maintained against the State without its consent, and this inhibition cannot be evaded by making an action nominally one against the servants or agent of the State when the real claim is against the State itself and it is the party vitally interested, yet a suit may be brought against a State officer or agent when he acts illegally and in an unauthorized manner." *Cannon v.*

*Montgomery,* 184 Ga. 588 (2) (192 SE 206).

3. This suit is a trover action by a prisoner who claims that an officer of a state penal institution took personal property (which does not at this point appear to be contraband) from him and refuses to account for it. If the prisoner, instead of "masculine tape" and other such articles, had lost a large sum in cash under the same circumstances, would we say, as this opinion does, that the immunity adhering in the state also insulates its agent the superintendent "since any judgment in favor of the plaintiff would have to be satisfied from assets of the state?" If, instead of taking the property from a prisoner, a police officer entered your home or mine and removed it, would the same reasoning apply?

Even a convict (who may be serving several years of incarceration for theft) is entitled to be protected from theft on the part of the state; otherwise the state is no better than the convict. I do not believe the doctrine of governmental immunity is alone a sufficient reason for holding that this plaintiff is not entitled to bring trover for his property.

EVANS, Judge, dissenting.

The lower court sustained defendant's motion for summary judgment, and I respectfully dissent.

This is a trover suit by Selmer L. Cooper, Jr., a state prisoner, for the recovery of certain personal property which disappeared soon after he was transferred from Reidsville Prison to Jackson Diagnostic Center.

His complaint alleges that on April 15, 1974, at approximately 11 a.m., he was ordered to pack his personal property and prepare to transfer from Reidsville Prison to Jackson Diagnostic Center; that he arrived at Jackson Diagnostic Center on the following day at approximately 2:30 a.m., *and was required by those in authority to leave his property in the hallway while he was shuttled to an area of the new prison known as H-1.* Later, during that day he learned that his personal property was missing.

An itemized list of the property is attached to his complaint, which appear to be tools used in leather work, of the value of $240.90.

This action was brought against Dr. James G. Ricketts, defendant, as Superintendent of the Diagnostic Center at Jackson, Georgia.

Defendant filed an answer, followed by a motion for summary judgment.

Plaintiff attached to his complaint two affidavits by fellow prisoners showing they knew plaintiff had the described personal property in his possession on the bus trip from Reidsville to Jackson, but on motion of defendant, the trial court properly struck these two affidavits. *But plaintiff's own affidavit was attached to the complaint and remained a part thereof, whereas defendant's answer was not sworn to.*

The majority opinion is short and concise. It correctly holds that plaintiff's constitutional attacks could not be considered because they had not been made in the trial court. But now we come to the gist of the majority opinion which is clearly erroneous: *"The plaintiff did not offer any evidence in opposition to the defendant's motion for summary judgment,* including the aforesaid affidavits. The affidavits of possible witnesses were not properly a part of the complaint and were correctly stricken by the trial judge."

1. The majority opinion mistakenly travels on the assumption that the *burden was on the plaintiff,* but the contrary is true. *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (126 SE2d 442), at pages 4, 5; *McCarty v. National Life &c. Co.,* 107 Ga. App. 178, 179 (129 SE2d 408). The majority opinion obviously overlooks the fact that plaintiff's complaint was *verified by the affidavit of plaintiff,* and absolutely no duty devolved upon plaintiff to submit additional affidavits controverting the *purported affidavit* of defendant which was offered to support his motion for summary judgment.

2. Plaintiff was not represented by counsel, this being on his part a "pro se" action. His complaint was in two sections, the first containing five lettered paragraphs, and the last containing a summary of three lettered paragraphs. Defendant was represented by counsel and the only paragraph of complaint denied by the answer is in this language: "Defendant denies the allegations contained in paragraph (B) of petition." Under this vague

language, it cannot be determined whether he was denying the first paragraph (B) or the second paragraph (B); and it may be thus construed that he *denied nothing* in the sworn petition, so far as his answer goes.

3. But now we come to defendant's affidavit. Code Ann. § 81A-156 (e) provides wisely that all affidavits supporting or opposing motions for summary judgment must be made on *personal knowledge.* In a very vague, ambiguous and general fashion defendant appears to have tried to qualify his affidavit in paragraph 11 thereof by asserting that: "11. *This affidavit is based on personal knowledge."* Are we required to accept such statement when the remainder of the affidavit (see Tr. 17, 18, consisting of 12 paragraphs) shows that *it was not made on personal knowledge?* No, indeed! The law provides that even though the affidavit omits the statement that it is made on personal knowledge, it may yet be considered if it is shown from the facts stated therein that it is in fact made on personal knowledge. See: *Holland v. Sanfax Corp.,* 106 Ga. App. 1, 5, supra. By the same reasoning, we do not have to accept a statement that the affidavit is made on personal knowledge when we can clearly discern from the statements made therein that *it was not made on personal knowledge.*

4. The affidavit is made to serve as evidence. As was cogently stated in *Sanfax* and *McCarty,* supra, the burden is on the party who moves for summary judgment. All reasonable doubts must be given the party opposing the motion. The evidence must be construed most favorably toward the party opposing the motion. All favorable *inferences* arising from the evidence must be given the opposing party. If more than one inference can arise from the evidence, the duty of solving the mystery should be placed on the jury, and not on the judge.

5. What is the requirement and legal effect of affidavits as to motions for summary judgment?

In *Planters Rural Tel. Co-op. Inc. v. Chance,* 108 Ga. App. 146 (132 SE2d 90), it is held that the affidavit in support of motion for summary judgment: *"must contain evidentiary matter which, if affiant were in court and testified on the witness stand, would be admissible as part of his testimony."* (Emphasis supplied.)

6. And finally, hearsay testimony, even though admitted without objection, has no probative value — proves nothing. *Jones v. State,* 50 Ga. App. 97 (1) (176 SE 896); *Woods v. Martin,* 212 Ga. 405, 406 (3) (93 SE2d 339).

7. Oftentimes the truth is illustrated better by what the witness *did not say* than by what he actually said. So let us consider defendant's affidavit with the following criteria in mind:

(1) Did he omit to state something which thereby concealed the truth? (Was he forthright?)

(2) Did he actually have personal knowledge of all of that to which he testified?

(3) Did he swear only to such events as to which he would have been allowed to testify as a witness if on the stand in a court trial?

(4) Did he testify from hearsay?

(5) Can more than one inference arise from his statements in his affidavit?

(6) When construed most favorably towards plaintiff, including all doubts and inferences, what does the affidavit prove?

8. (a) The Ricketts affidavit avers *"that affiant was at the institution when Mr. Cooper arrived."* What an artful concealment of the truth is this statement! The Jackson Diagnostic Center covers approximately 1,000 acres of land, and has thereon a prison compound, three permanent residences and a trailer park of many mobile homes and other buildings, and is staffed by 225 employees. Ricketts does not swear that he was *up and awake at 2:30 in the morning, or that he was in the same building where plaintiff was received, or that he saw him, or even knew of his presence.* The evidence and all favorable inferences and all doubts arising from the evidence, according to *Sanfax* and *McCarty,* supra, and a host of later authorities must be construed most favorably towards the party opposing the motion for summary judgment. Ricketts was merely *at the institution* (we know not in what building nor how sound asleep he was during all of this time) and yet his purpose here is to lead us astray into believing Ricketts was personally present to greet the new arrivals, and it just won't work!

It would have been strange, indeed, if the su-

perintendent of this large institution, with 225 employees working under him and subject to his orders, should take on himself the arduous duty of waiting up until 2:30 a.m. in the morning to receive those prisoners transferred from other penal institutions! We know he did not do so — or he would have been forthright and said so — and would not try to hide behind "affiant was *in the institution* when Mr. Cooper arrived."

His entire affidavit is in keeping with the foregoing artfully contrived failure to answer forthrightly and to lead us to believe he was awake at 2:30 a.m., and personally saw this prisoner as soon as he arrived.

(b) Next, he swears that Cooper and other inmates were taken into custody and their personal belongings were placed on conveyor carts and sent to the warehouse; that an officer took possession and custody of the personal items, and placed them in the warehouse and they were kept under lock and key *by the warehouse supervisor* until removed the next day. *Surely this is the rankest form of hearsay!* Is Dr. Ricketts trying to convey the impression that he walked along beside the conveyor carts and saw the possessions of plaintiff placed in the warehouse? If so, why not say so? What is the name of the officer who kept them under lock and key — and why is his affidavit not submitted? Did Dr. Ricketts see him turn the key in the lock? Why not say so?

(c) Dr. Ricketts swears that the personal items of Cooper were placed in the I. D. room and kept *under the watchful custody of the supervisor of the I. D. room.* How does Dr. Ricketts know this unless told by the supervisor? And of course that would be hearsay, inadmissible, and without probative value even though admitted.

(d) He swears that the inmates were permitted to come to the I. D. room and pick up their personal belongings. Did he see plaintiff pick up any belongings? Was Dr. Ricketts present? If he was, why not say so, loud and clear? Why not be forthright?

(e) Finally, he swears: "That your affiant *nor any of the employees* of the Diagnostic and Classification Center either damaged or loss [sic] or permitted damage or loss to the personal property of Mr. Selmer L. Cooper, Jr." Here deponent takes on the characteristics of being omnipres-

ent and omnipotent. He speaks for 225 employees as if he knows what each one did and what each one did not do. *This just has to be hearsay and an affidavit of this nature should not be given any credence whatever!* His entire affidavit is of the same nature. His motion for summary judgment should be treated *as being supported by no affidavit whatever.*

Even though Cooper was an inmate of a penal institution, after having transgressed the laws of our state, we, as a state, still owe him something, including the duty of not mistreating him, and of not allowing his valuable personal property to be stolen or taken from him, or misplaced.

The burden here was on the defendant. He has not carried it. I most respectfully and emphatically dissent.

I am authorized to state that Presiding Judge Deen joins in this dissent.