60917. BROWN v. DEPARTMENT OF HUMAN RESOURCES.

QUILLIAN, Chief Judge.

This is an appeal by a father of the termination of his parental rights.

In December 1974 Shirley Brown gave birth to twin girls fathered by appellant. It is not clear whether she and appellant were married. She had four older children by a marriage to another man named Brown. She lived with appellant intermittently while pregnant with the twins and until three months after they were born when appellant shot and killed her. As a result appellant was confined in the county jail and the twins placed in a foster home under the court-ordered custody of the county Department of Family and Children's Services (hereafter Department). Appellant remained in jail, was convicted of voluntary manslaughter and was sentenced to 15 years in prison. While in the county jail awaiting trial and appeal, at appellant's request a caseworker from the Department every 4 to 6 weeks took the twins to the jail to visit him for short periods. These visits continued until June 1976 and appellant had no contact with the twins thereafter although he remained in the local jail until November 1977. At the time of the hearing on the termination of appellant's parental rights in January 1980 appellant was an inmate of the state prison at Reidsville and was pending a parole hearing. He was paroled by April 1980. The juvenile court found that the children were deprived, without proper parental care, that the deprivation was likely to continue and result in serious harm if their custody was returned to appellant, and terminated appellant's parental rights. *Held:*

1. In Enumerations 1, 3 and 4 it is claimed that the evidence is insufficient to support the termination of parental rights. While Enumerations 3 and 4 also allege constitutional issues, the issues were not raised at the trial level and therefore cannot be considered for the first time on appeal. *Cooper v. Ricketts,* 135 Ga. App. 346 (1) (217 SE2d 503).

Code Ann. § 24A-3201 (Ga. L. 1971, pp. 709, 747 through 1977, pp. 181, 182) provides: "(a) The court by order may terminate the parental rights of a parent with respect to his child if: . . . (2) the child is a deprived child and the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral or emotional harm. . ."

Termination of parental rights necessitates consideration of the " 'welfare of the child' test" and "some required showing of parental unfitness, caused either by intentional or unintentional misconduct resulting in abuse or neglect of the child, or what is tantamount to physical or mental incapability to care for the child." *Ray v. Dept. of Human Resources,* 155 Ga. App. 81 (2), 88 (270 SE2d 303). Accord, *Chancey v. Dept. of Human Resources,* 156 Ga. App. 338.

The following evidence supports termination. Appellant intentionally killed the mother when the twins were three months old, depriving them of their mother and causing them to be placed in foster homes in the custody of the Department. Appellant had minimal personal contacts with the children. He intermittently lived with them and the mother during the first three months of their lives and then had periodic brief visits with them in the jail until they were one and a half years old. Thereafter he had no contact with them of any nature. He did not communicate with the Department about them or send them gifts or in any way provide for their support although he was financially able to do so as the owner of rental property and of several thousand dollars in two bank accounts and had a friend who handled his affairs and disbursed money for him whenever he asked. Up to the time of the mother's death the twins lived with their mother and her other children in unclean homes in conditions of extreme poverty with the mother receiving welfare (Aid to Families with Dependent Children) although appellant was working at Lockheed where he had been employed for over 24 years. A psychologist who examined the twins and the director of the special education program the twins were attending testified that they were developmentally retarded children in need of special education who required more attention than other children of their age by very special parents in a stable environment who could give them the extraordinary care they required. Appellant was 56 years old, in prison with an expectation of parole, unemployed with a possibility of returning to his former job, and no indication that he had any experience in providing the exceptional care required for the children or that there was anyone else to assist him in doing so.

Appellant claims that the twins retardation would have occurred regardless of whom they lived with; that the Department

did nothing about their retardation until they were four and a half years old; that the retardation did not develop while they were under his control; that several witnesses testified that appellant had property, had been seen with the children before he was jailed and acted like a normal father, did not abuse the twins and was proud of them; that after he was imprisoned he requested information about them from a friend, asked for their pictures, and attempted to send them presents; and that his efforts to communicate with and provide a home for the twins with a family who rented from him were frustrated by the Department because it did not contact him or the renter family to tell them how to go about doing these things. (It was the Department's policy that it was a parental responsibility to ask for assistance in such matters.) Appellant testified that he would do what he could to provide a home for the twins, believed he would find employment, would be willing to provide special tutors for them, and would take care of them and give them a good home and education and the love and understanding they needed.

Appellant's argument that the trial court's finding is based solely on unclean living conditions and poverty ignores the fact of his misconduct in intentionally killing the children's mother, which renders him morally unfit to have custody and control of the children. *Sturkie v. Skinner,* 214 Ga. 264 (3) (104 SE2d 417); *George v. Anderson,* 135 Ga. App. 273 (3) (217 SE2d 609).

In addition to the ground for termination based on appellant's misconduct, his claim of ability to provide for the very special home, educational and parenting needs required for the children is hardly credible in view of his past performance concerning them and his present circumstances.

The evidentiary standard for termination of parental rights is "compelling facts to establish the necessary lack of 'proper parental care or control.'" *Nix v. Dept. of Human Resources,* 236 Ga. 794, 795 (225 SE2d 306). We find that the evidence establishes sufficient compelling facts to authorize the trial court's finding of parental termination.

2. The second enumeration is based upon speculation and conjecture and is without merit.

3. The remaining enumeration claims error because in the hearing on a motion for a new trial, the juvenile court denied appellant's counsel's request for permission for appellant to make a statement to the court on his own behalf. It is contended that this was a denial of appellant's constitutional right to represent himself as provided by Code Ann. § 2-109.

We find no error. If viewed as an attempt to present additional evidence the procedure is not authorized by Code Ann. § 2-109. If the

request was for additional argument, since appellant's counsel had already argued the motion, the trial court in its discretion could regulate how many arguments could be made on the same side of a case. *Gunnells v. Cotton State Mut. Ins. Co.,* 117 Ga. App. 123 (6) (159 SE2d 730).

*Judgment affirmed. Shulman, P. J., and Carley, J., concur.*

DECIDED JANUARY 13, 1981 —

*William L. Henderson,* for appellant.

*Arthur K. Bolton, Attorney General, Vivian Davidson Egan, Carol Atha Cosgrove, Assistant Attorneys General,* for appellee.