77150. IN THE INTEREST OF J. M. K. et al.
(375 SE2d 131)

McMURRAY, Presiding Judge.

On February 24, 1988, the Juvenile Court of Henry County entered an order terminating the parental rights of the father of J. M. K., a male child born February 7, 1983, and J. M. K., a male child born March 28, 1985.[1] It is from this order that the father ap-

---

[1] The Georgia Department of Human Resources brought a petition to terminate the parental rights of both the mother and father. However, the juvenile court found that the mother had progressed by establishing a suitable home environment for the children and that she had gained stable employment in the months preceding the termination hearing. As a consequence, the juvenile court granted the mother custody of the children subject to compli-

peals. *Held*:

In his sole enumeration of error, the father challenges the sufficiency of the evidence. " ' "(T)he appropriate standard of appellate review in a case where a parent's rights to his child have been severed is 'whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost.' " (Cits.)' *In the Interest of A. O. A.*, 172 Ga. App. 364, 365-366 (323 SE2d 208) (1984). 'The factfinding and weighing of evidence is to be done in the trial court under the clear and convincing evidence test. The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review, . . . is not met.' *In re B. D. C.*, 256 Ga. 511, 513 (350 SE2d 444) (1986)." *In re A. N. Y.*, 181 Ga. App. 499 (353 SE2d 8).

"OCGA § 15-11-81 (a) provides a two-step procedure to be followed in considering the termination of parental rights. First, the court shall determine whether there is present clear and convincing evidence of parental misconduct or inability as provided by OCGA § 15-11-81 (b). Secondly, '(i)f there is clear and convincing evidence of such parental misconduct or inability, the court shall then consider whether termination of parental rights is in the best interest of the child, . . .' OCGA § 15-11-81 (a)." *In the Interest of A. T.*, 187 Ga. App. 299, 301 (2) (370 SE2d 48).

OCGA § 15-11-81 (b) (4) (A) provides the following standard for determining parental misconduct or inability: "(i) The child is a deprived child, as such term is defined in Code Section 15-11-2; (ii) The lack of proper parental care or control by the parent in question is the cause of the child's status as deprived; (iii) Such cause of deprivation is likely to continue or will not likely be remedied; and (iv) The continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child."

There was clear and convincing evidence in the case sub judice that the children were deprived as a result of the father's inability to provide the children with adequate food, shelter and supervision. In this regard, the evidence revealed that the Georgia Department of Human Resources, acting through the Henry County Department of Family and Children Services, was compelled to take the children from the father on February 11, 1986, after the children were found "outside [a trailer at 5:30 in the morning, in the] pouring down rain. . . ." The children "were covered with mud at the time" and it was discovered that the father, who then had sole custody of the chil-

---

ance with an explicit plan directed toward her continued parental habilitation and designed to assure the children's physical and emotional well-being.

dren, had left them unattended after he "left the residence around 4:30 or a quarter of 5:00 that morning going to work. . . ." (The oldest child was then less than three years of age and the youngest was less than a year old.) Later that day, the father went to the Department of Family and Children Services' office and explained to a caseworker "that he had been separated from [the mother] for about 14 months"; that "he had been living in the trailer for approximately a month[; that he] had just recently been released from prison for auto theft [and that] he . . . had been keeping the children for [the mother] since that time." (The father was living in the trailer with a friend and the friend's 16-year-old son. The trailer was "sparsely furnished and dark" and it appeared that the children "were sleeping on the sofa. . . .")

A deprivation hearing was conducted on February 13, 1986, after which the children were placed in the temporary custody of the Georgia Department of Human Resources, acting through the Henry County Department of Family and Children Services, and situated in foster care.[2] On April 2, 1986, a plan specifically designed to enable the father to regain parental control or custody of the children was entered by the juvenile court. The father acknowledged the terms of the plan and stated that he understood its goal. However, since the reunification plan was entered, the father has significantly failed to comply with the terms thereof. More specifically, the father has accomplished only two brief visits with the children since the Department of Human Resources took custody of the children on February 11, 1986. He has not maintained a stable residence; he has not located appropriate day care for the children; he has not attended parenting classes and he has not attended counseling designed to treat his alcoholism. Finally, the father has failed to contribute any financial support for the children, even though he has had the resources to do so. In fact, since the children were placed in the temporary custody of the Department of Human Resources, the father has continued a pattern of criminal activity which has placed him in situations of incarceration and has prevented him from achieving many of the goals for reunification.[3] Further, while the father has been incarcerated he has

---

[2] "At the time the children were placed in temporary custody of the Department, neither parent was in opposition of that. The mother did not have a place to live. The father did not have a lot of money. He had been using a baby-sitter sometimes for the sole purpose of being able to feed the children, and he did not have the resources to take care of the children, and the mother did not either at that time."

[3] The juvenile court found that the father "has had numerous criminal convictions for which he served time in prison including the offense of aggravated assault in 1982 in Cobb County, Georgia for which he served approximately six months in prison, the offense of auto theft in Upson County, Georgia in April 1985 for which he was incarcerated from April 1985 through January 1986 and was thereafter placed on probation, the offense of driving under the influence in Fulton County, Georgia in March 1986 for which . . . he served approxi-

failed to communicate with the children and he has shown little interest in the children's well-being. This clear and convincing evidence is more than sufficient to authorize a termination of the father's parental rights according to the standard provided by OCGA § 15-11-81. See *Brown v. Dept. of Human Resources*, 157 Ga. App. 106 (276 SE2d 155). Compare *In the Interest of H. L. T.*, 164 Ga. App. 517 (298 SE2d 33). Accordingly, the juvenile court did not err in terminating the father's parental rights.

*Judgment affirmed. Pope and Benham, JJ., concur.*

DECIDED NOVEMBER 3, 1988.

Crumbley & Crumbley, R. Nathan Langford, Jr., for appellant.
Eugene W. Dabbs IV, Michael J. Bowers, Attorney General, Carol A. Cosgrove, Senior Assistant Attorney General, for appellee.

---

mately three months in jail and was released on probation in June 1986 together with the multiple offenses of burglary, theft and unlawful use of license in Cobb County, Georgia on November 4, 1986, for which he received a total sentence of twenty years, six years of which were to be served in the state penal system with the remaining sentence on probation."