548 So.2d 1312 (1989)
Nina VESELITS and Robert Veselits
v.
Erie CRUTHIRDS and Laneeta Cruthirds.
No. 07-58543.
Supreme Court of Mississippi.
September 13, 1989.
*1313 William H. Myers, Gordon Myers Pitcher Firm, Pascagoula, for appellants.
James Briley Richmond Jr., Biloxi, Amanda Beatty Kennerly, Ocean Springs, for appellees.
Before ROY NOBLE LEE, ROBERTSON and PITTMAN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Nina Veselits and Robert Veselits, paternal grandmother and father, respectively, of Stephine Veselits, filed suit in the Chancery Court of Jackson County, Mississippi, seeking custody of Stephine. The chancellor awarded full, complete and paramount care, custody and control of Stephine to Erie Cruthirds and Laneeta Cruthirds, her maternal grandparents. The Cruthirds sought cancellation of the father's parental rights and attorney's fees, both of which were denied. Veselits have appealed from the judgment and the Cruthirds have cross-appealed.

Facts
Robert Veselits and Shari Cruthirds were married in 1978. Soon afterward, Robert joined the Air Force. and was stationed at Barksdale AFB, Bossier City, Louisiana. On October 15, 1978, Stephine was born to the marriage. The family unit was maintained for about fourteen (14) months thereafter, when Shari herself joined the Air Force on January 3, 1980. Robert did not want his wife to join the Air Force and had expressed disapproval of her actions.
Shari was stationed at Lackland AFB in Texas for basic training. During that time, she was not permitted to make outside calls for the first few days of her training. On approximately the eighth day of basic training, she was allowed to make a telephone call home. During this first phone call, Robert called Shari a "bitch," a "whore," and a "liar." He accused her of "whoring around" while at basic. During subsequent phone calls home, Robert told Shari that he would see her dead before he would let her have the child. (Witnesses listened in on the phone calls). In these phone conversations, he also told Shari that he was getting a divorce and would take the baby away from her.
After basic training, Shari was assigned to Keesler AFB in Biloxi, Mississippi, on February 20, 1980. Since her parents lived only a short distance away from Keesler, Shari applied to live off base and was granted that permission. She moved with Stephine into the home of her parents on Monday, February 25.
Shari found it necessary to go to Bosier City for some belongings of the baby and herself. On March 1, 1980, Shari drove to the home in Louisiana for that purpose. Upon her arrival, Robert met her at the door. He took Shari inside and an argument immediately ensued. According to Robert, Shari told him that she was sleeping with another man and was going to seek a divorce; that he became enraged, picked up a revolver from the nightstand beside the bed, shoved it into Shari's stomach and fired two rounds. Paramedics were summoned to the scene, where they rushed Shari to the hospital. She died en route as a result of blood loss from the two gunshot wounds.
When the paramedics arrived at the residence, they found Robert on the telephone. This phone conversation was allegedly to tell his family to get Stephine from the Cruthirds in Mississippi. On the same day, the sister of the appellant, Nina Veselits, dressed herself in a Jackson County Sheriff's uniform and went to the Cruthirds family home with a worthless power of attorney. The sister told a shocked Mrs. Cruthirds that Shari was dead and that Bobby had killed her. She further advised Mrs. Cruthirds that she had come to take Stephine. This was the first time that the Cruthirds family had been told of Shari's death. At that time, Stephine was not at *1314 the residence, but was visiting other family members.
Robert Veselits was charged with second degree murder in the death of his wife. The offense was reduced to manslaughter after a plea bargain was arranged through Veselits' attorney. Veselits then rescinded the agreement and pled not guilty when before the court. A trial was held, he was convicted of manslaughter and was sentenced to nine (9) years in the Louisiana Department of Corrections. The district attorney, who prosecuted him, and the chief of police, who took his confession, opposed any type of early release for Robert Veselits, but Veselits obtained a pardon from Governor Edwards.
Mrs. Cruthirds was appointed guardian of Stephine's estate, and pursuant to Mississippi Code Annotated § 91-1-25 (1972), was authorized in two separate proceedings in the U.S. District Court, Southern District of Mississippi, to preserve the inheritance of Shari for her child as against the interest of Robert Veselits, who refused to execute releases in favor of his daughter for two insurance policies on the life of Shari. Nina Veselits had notified the insurance companies of Shari's death.
After a series of legal attacks by Nina Veselits for custody of Stephine, full custody was awarded to Erie and Laneeta Cruthirds, maternal grandparents, by the Jackson County Chancery Court on December 16, 1986. In a 13-page ruling by the chancellor, the court found that Robert was unfit to have custody of his daughter Stephine at that time. However, the chancellor refused to sever the parental rights of Robert Veselits as the father of Stephine.

Law

I.  II.
The appellants contend (I) that the lower court erred in failing to grant full custody of Stephine Veselits to the appellant Robert Veselits, her father, and (II) in granting custody of Stephine Veselits to the maternal grandparents.
The finding of fact and the opinion of the learned chancellor consist of thirteen (13) pages. He fully set forth the reasons and conclusions for the support of his decision. Excerpts from that opinion follow:
The Court finds from the totality of all the facts, circumstances, and from clear and convincing evidence in this case that the best interest of S.V. can best be served with her maternal grandparents, E.C. and L.C.
This case appears to be a case of first impression in the State of Mississippi. There are similar factual situations in many of these type cases, but none appear exactly on "all fours" as to this case. Therefore, this trier of fact, recognizing the extreme importance of this case and the future of the child in question, has looked to other jurisdictions for help and guidance in this case, as well as to the Mississippi Code.
* * * * * *
Therefore, considering all material and ultimate facts and evidence in this record, the nature of the crime, the lack of any rapport being shown or established by the father with the child prior to his killing her mother, the lack of contact by the father with the child on his own, such as calls, letters and support paid directly by him and not his mother or grandmother, the bonding of the child to her maternal grandparents, the depriving of the child of her mother's love and affection, his uncertain propensities to future violence, his working hours, his lack of an established home and any possible future marriage and that relationship of his future wife with the child, or, if he continues to live with his mother, her frequent job changes and moving from one place to another, the lack of time spent with the father, all convinces this Court that without any doubt or Question that S.V.' best interest can be clearly and convincingly served in the well settled home and environment of E.C. and L.C. where she has been most, if not all, of her life. Nowhere in this record is there any evidence of the unfitness of E. and L.C. or that S.V.' best interest could not best be served with the only father and mother she has ever *1315 known. Presently she is excelling in school, is receiving proper religious training, and she has friends in and around her neighborhood, she has the association and support of E. and L.C.' other children, and it is this Court's opinion that removing her from this environment would destroy this little girl to uproot her from her present home and family to place her with her father only because he is a natural parent.
* * * * * *
Therefore, in spite of the father's efforts to show rehabilitation, employment, a nice home, nonetheless convinces this Court that they are only superficial and he would be otherwise unfit to have custody from the clear and convincing evidence shown. His credibility is questionable particularly as to his denials of any threats to his wife over the telephone prior to her going to see him. As indicated, this Court is not convinced that he will or could not do this again from the psychological testing. This Court cannot believe that his situation is as good as he represents it to be. The Court cannot find that he is a fit and suitable parent when he not for one moment considered what the killing of the child's mother would do to the child. Further, the Court has not observed any remorse on part of R.V. The proof has not shown at anytime [sic] that he has unequivocally stated that he was sorry. He appeared throughout this entire proceeding as being without feeling or emotion about what he had done, and appearing to be indifferent toward the affect [sic] of his action on the child, thinking that the absence of the child's mother can now be made up with material things. Therefore, full, complete and paramount care, custody and control of S.V. is hereby awarded to E.C. and L.C., subject to supervised visitations with the father, or visitations with the father and a third party, or in the home of he [sic] and his mother, during the summer and holidays where visitations would not interfere with school work, and under such times that the child will not be shifted back and forth upsetting her routine. This Court is aware of the fact that the child needs stability in her life and litigation must end regarding her.
* * * * * *
Nevertheless, the reluctance of the Court to terminate his parental rights is no indication that the child's best interest cannot be served with her grandparents, and that he is unfit mentally and morally to have her custody. This child has been pulled back and forth between the grandparents too long. Visitations shall be in the home of N.V. commencing on December the 27th, 1986, until noon January 1, 1987, and two weeks in the summer during the month of July of each summer until the child reaches her tenth birthday, at which time the summer visitations should be extended to one month, being the last two weeks in June and the last two weeks in July. Brocato v. Walker, 220 So 2d 340 [Miss. 1969].
In that the parental rights of visitations for the paternal grandparents do not fall within Section 93-16-3 of the Mississippi Code of 1972, since R.V. is neither dead nor his rights terminated as a requisite for his mother to visit with the child, her relief for visitations in her own right is accordingly and respectfully denied. However, N.V. is designated as the person in whose home visitations may take place and the one to supervise visitations awarded to the father.
We have no quarrel with cases cited by the appellants, Bond v. Bond, 355 So.2d 672 (Miss. 1978), and Brown v. Robinson, 402 So.2d 354 (Miss. 1981). The cases are distinguished from the case at bar. In Brown, the husband and wife were serving in the United States Air Force, stationed at Chanute AFB, Illinois. The wife killed her husband during a domestic quarrel and was arrested, charged with murder, found guilty of negligent homicide, and received a bad conduct discharge, forfeiture of all pay and allowances, but was not sentenced to prison. During the term of her incarceration she had relinquished custody of her child to her parents (since she was incarcerated pending her trial). Upon being released *1316 from custody, Ms. Brown sought restoration of custody of her children. The Court permitted Ms. Brown to regain their custody. Brown is distinguished from the present case in that the issue to be decided there was whether or not a grandparent was entitled to visitation rights, a question not before this Court on the appeal.
Appellant father further argues that he was granted a full pardon from the State of Louisiana for his crime and that such crime no longer can be considered against him in any legal proceeding. However, the facts of the homicide and the effect upon the appellant and Stephine are viable and important in the consideration of this child custody case.
Although the chancellor found that the appellant father is mentally and morally unfit to have Stephine's custody, and granted complete custody to the maternal grandparents, appellees, he did grant liberal visitation rights to the appellant father. We cannot say that the learned chancellor was manifestly wrong and that his decision is against the overwhelming weight of the evidence. See Milam v. Milam, 509 So.2d 864, 866 (Miss. 1987); Harkins v. Fletcher, 499 So.2d 773, 775 (Miss. 1986); Carr v. Carr, 480 So.2d 1120, 1123-24 (Miss. 1985); Torrence v. Moore, 455 So.2d 778 (Miss. 1984). Therefore, the judgment of the lower court is affirmed on direct appeal.

CROSS-APPEAL

I.  II.
The appellees cross-appeal and contend (I) that the facts found by the chancellor in his opinion mandate termination of the parental rights of appellant, and (II) the lower court erred in declining to award appellees attorney's fees and expenses in their defense to appellant's complaint for custody of Stephine Veselits.
The appellees cite cases from other jurisdictions that hold the murder of one parent by the other forfeits the parental rights of the surviving parent. See Sturkie v. Skinner, 214 Ga. 264, 104 S.E.2d 417 (1958); George v. Anderson, 135 Ga. App. 273, 217 S.E.2d 609 (1975); Brown v. Department of Human Resources, 157 Ga. App. 106, 276 S.E.2d 155 (1981); In re Abdullah, 85 Ill.2d 300, 53 Ill.Dec. 246, 423 N.E.2d 915 (1981); Gillespie v. Bailey, 397 So.2d 130 (Ala.App. 1980); In the Matter of Sanders, 420 So.2d 790 (Ala.App. 1982); and In re: Ditter, 212 Neb. 279, 322 N.W.2d 642 (1982). Aside from the homicide, the evidence does not support, nor does the chancellor find, that there was an abandonment of the child by her father. Although the appellees did not seek support from the father, the chancellor found that Robert Veselits had made five $100.00 payments in support of his daughter and that this money was taken by the maternal grandparents and deposited in the bank in the name of the child (not spent for the child's immediate needs). The standard of proof on this issue must rise to the height of clear and convincing evidence. G.M.R. v. H.E.S., 489 So.2d 498, 500 (Miss. 1986). Again, we do not hold that the chancellor was manifestly wrong in refusing to terminate the parental rights of the appellant father.
The chancellor declined to allow attorney's fees and expenses for the appellees' defense of this action brought by the father and paternal grandmother. Appellees were granted complete custody for the best interest of the child, not for that of the maternal grandparents. Although, as stated, the appellees did not seek support in this action and defense of it, under the law and equity, the father is responsible for the support of the child. We do not order that support here, but emphatically point out to the parties below and the court, that this question of support may be, and should be, presented by the parties and determined by the court in the future. The father must support his child.
We are of the opinion that the chancellor erred in declining to award attorney's fees to the appellees for the defense of this action. Therefore, the judgment is reversed as to that issue on cross-appeal, and it is remanded to the lower court for further action in the award of reasonable attorney's fees and suit money.
*1317 The judgment of the lower court is affirmed on direct appeal and is affirmed in part and reversed and remanded in part on cross-appeal.
AFFIRMED ON DIRECT APPEAL; AFFIRMED IN PART AND REVERSED AND REMANDED IN PART ON CROSS-APPEAL.
HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., concurs on direct appeal and dissents as to the partial reversal on cross-appeal.