A90A0883. IN THE INTEREST OF B. L., a child.

(397 SE2d 156)

POPE, Judge.

Appellant, the natural mother of B. L., appeals from the order of the Juvenile Court of Hall County terminating her parental rights in her minor son.

The record shows that in July 1988 the mother left the child in the care of a non-relative without food or a change of clothing. Appellant left no information concerning her whereabouts and did not return when she stated she would. Because the child had not been fed or had his diaper changed in twenty-four hours the Hall County Department of Family & Children Services (DFCS) was contacted and an emergency shelter order was entered by the lower court. Subsequently, an order was entered, upon the mother's stipulation, finding the child to be deprived and temporary custody was awarded to the Georgia Department of Human Resources acting by and through Hall County DFCS. The order also detailed a plan designed to reunite the mother with the child, pursuant to which the mother was to accomplish the following: obtain and maintain a suitable residence, obtain and maintain a means of support, present an appropriate child care plan, maintain proper medical care for herself (the mother suffers from a seizure disorder), attend and cooperate with parenting skills classes, submit to a psychological evaluation, and advise DFCS of changes in address and employment.

The child subsequently was placed in the home of the paternal grandparents. On May 30, 1989, the Georgia Department of Human Resources acting by and through Hall County DFCS filed a petition for termination of parental rights. An order terminating the father's parental rights was entered in August 1989. Because the appellant's whereabouts were unknown, an order was entered on July 28, 1989, authorizing service by publication. However, the mother visited the Hall County DFCS office on August 25, 1989, and at that time was personally served with the petition to terminate as well as notice of the hearing to be held on the petition. Appellant was also advised to contact the attorney who had been appointed to represent her prior to the scheduled hearing. Hearings on the petition were held on October 2 and October 6, 1989. The mother appeals from the trial court's order of October 13, 1989, terminating her parental rights.

1. Appellant first contends the trial court erred in considering evidence of her non-compliance with the court-ordered reunification plan because the petition to terminate was filed less than one year

after the court's reunification plan was instituted. OCGA § 15-11-81 (b) (4) (C) provides that "[i]n addition to the considerations in subparagraph (B) of this paragraph, where the child is not in the custody of the parent who is the subject of the proceedings, in determining whether the child is without proper parental care and control, the court shall consider, without being limited to, whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: . . . (iii) [t]o comply with a court ordered plan designed to reunite the child with the parent or parents."

The record in this case shows the petition to terminate was filed approximately ten months after the reunification plan was entered. However, because the whereabouts of the mother were unknown, personal service was not perfected until August 25, 1989, more than one year after the reunification plan was implemented. At the time of the hearing in October 1989, approximately fifteen months had elapsed since the reunification plan was entered. At that hearing evidence was presented concerning the mother's present circumstances, including efforts to comply with the plan up to and including the date of the hearing.

The time limitation in OCGA § 15-11-81 (b) (4) (C) clearly is designed to give the parent whose rights are subject to termination sufficient time and opportunity to demonstrate his or her ability to comply with the terms of the court's order. That intent was clearly served in this case. Thus we find no merit to appellant's first enumeration of error.

2. Contrary to appellant's third enumeration of error, the juvenile court made no finding that appellant had abandoned her child pursuant to OCGA § 15-11-81 (b) (3). Rather, the juvenile court stated in its order that "had [appellant] not appeared in [the DFCS] office on August 25, 1989, the Department *would have been able* to establish [circumstances showing abandonment]." Likewise, the juvenile court, contrary to appellant's fourth enumeration of error, made no finding that appellant had relinquished parental control. The court's statements concerning the relinquishment of parental duties were made in the context of the court's statements on abandonment, which, as stated supra, was the court's opinion only as to what could have been shown, had the mother not visited the DFCS office in late August. It is clear from the juvenile court's order that it did not terminate appellant's parental rights because she had abandoned her child. Consequently, these enumerations of error are without merit.

3. Appellant also challenges the sufficiency of the evidence to support the juvenile court's findings pursuant to OCGA § 15-11-81 (b).

Turning first to the juvenile court's findings concerning the fail-

ure to comply with the reunification plan, the record shows that over the fifteen months preceding the termination hearing appellant had lived in five or six different locations, and had given her DFCS caseworkers between seven and nine different addresses where she could be reached. At times appellant's whereabouts were unknown, as evidenced by failed attempts to reach her at the addresses given and testimony showing that appellant failed to contact DFCS workers for periods extending over several months. Although appellant was living with her mother at the time of the termination hearing, a caseworker testified that the results of a previous home study on that residence had been unfavorable. The evidence also shows that appellant had a very unstable employment history and that she was unemployed at the time of the second hearing. Appellant repeatedly failed to keep appointments for mental health counseling and parenting classes; although appellant ultimately complied with the directive to undergo a psychological evaluation, she missed several appointments before the evaluation was completed.

As to other evidence concerning grounds for termination as provided by OCGA § 15-11-81, testimony was presented that appellant had been addicted to cocaine and, although she had sought treatment for the problem, it was unclear whether she had in fact completed the treatment program. DFCS caseworkers testified that appellant did not request to see her son or contact the paternal grandparents in order to inquire about her son's well-being. Testimony was also presented that the child would "absolutely" be deprived if returned to appellant and that the child needed permanency and stability in his life. Appellant testified that she had inquired once about her son and was told he was fine. Appellant further testified that while she felt she had made some progress she was not yet ready to have her child returned, although she felt she could accomplish the goals necessary to regain custody of her child if she were given another six months to a year.

"The appropriate standard of appellate review in a case of this sort is whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody were lost. The factfinding and weighing of evidence is to be done in the trial court under the clear and convincing evidence test. The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review, here the rational factfinder test, is not met. When we apply that test here we note the conflicting evidence presented to the trial court and conclude that a rational factfinder could have found by clear and convincing evidence parental misconduct or inability as provided by OCGA § 15-11-81 (b). (Indention omitted.) *In re B. D. C.*, 256 Ga.

511, 512-13 (350 SE2d 444) (1986). See also *In the Interest of J. M. K.*, 189 Ga. App. 140 (375 SE2d 131) (1988); *In the Interest of J. A. B.*, 189 Ga. App. 79 (1) (374 SE2d 839) (1988); *In the Interest of S. G.*, 182 Ga. App. 95 (354 SE2d 640) (1987). *In the Interest of J. L. G.*, 191 Ga. App. 904, 905 (383 SE2d 376) (1989). In a case such as this, a plea of additional time to improve is without force to overcome the proof of unrelieved detriment already suffered by the child where there is no indication but the promise to suggest hope of improvement. *In re G. M. N.*, 183 Ga. App. 458, 461 (359 SE2d 217) (1987). *In the Interest of S. L.*, 189 Ga. App. 361, 362 (375 SE2d 484) (1988). See also *In re J. L. W.*, 170 Ga. App. 886 (318 SE2d 751) (1984)." (Punctuation omitted.) *In the Interest of C. M.*, 194 Ga. App. 503, 504 (1) (391 SE2d 26) (1990).

4. Lastly, appellant contends the evidence was insufficient to support the juvenile court's determination that the termination of parental rights was in the best interest of the child, as required by OCGA § 15-11-81 (a).

" 'Obviously, those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights . . . (is) in the [child's] best interest. Thus, a finding as to whether the termination of parental rights is in the best interest of the [child] represents, in essence, a finding as to whether the specifics of the parental default that have *otherwise* been found to exist are of such magnitude as to warrant the conclusion that the [child] would be better served by the grant of the petition to terminate. (Cits.) In this regard, our review of the entire record shows that there was likewise sufficient clear and convincing evidence to support the juvenile court's finding that the termination of the parental rights of (appellant) would be in the [child's] best interest. (Cits.)' *In the Interest of G. K. J.*, 187 Ga. App. 443, 444 (2) (370 SE2d 490) (1988)." *In the Interest of J. I. H.*, 191 Ga. App. 848, 850-851 (383 SE2d 349) (1989). Consequently, having found no error in the juvenile court's order requiring reversal, we must affirm.

*Judgment affirmed. Deen, P. J., and Beasley, J., concur.*

DECIDED SEPTEMBER 5, 1990.

*Robbins & White, Clara E. White*, for appellant.

*Michael J. Bowers, Attorney General, Carol A. Cosgrove, William C. Joy, Senior Assistant Attorneys General, Patti P. Cornett*, for appellee.