A93A1108. IN THE INTEREST OF C. D. P., a child.
(438 SE2d 155)

SMITH, Judge.

A petition for termination of the parental rights of the father of C. D. P. was filed in the Juvenile Court of Whitfield County. The mother had voluntarily surrendered her parental rights. The father appeals from the court's order terminating his parental rights.

1. Appellant enumerates as error the court's denial of his motion in limine. He seeks to exclude evidence that he had failed to comply with a court-ordered reunification plan under OCGA § 15-11-81 (b) (4) (C) (iii). He contends that the evidence was inadmissible because a court order adopting the plan was entered less than one year before the filing of the petition to terminate parental rights.

The relevant portions of OCGA § 15-11-81 (b) (4) (C) provide: "In addition to the considerations in subparagraph (B) of this paragraph, where the child is not in the custody of the parent who is the subject of the proceedings, in determining whether the child is without proper parental care and control, the court shall consider, without being limited to, whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: . . . (iii) To comply with a court ordered plan designed to reunite the child with the parent or parents."

This issue was addressed recently by *In the Interest of B. L.*, 196 Ga. App. 807 (1) (397 SE2d 156) (1990). The parent in that case contended that the juvenile court erred in considering evidence of her failure to comply with such a court-ordered plan, because the petition to terminate was filed less that one year after the plan was instituted. However, because of difficulties with service of process, the hearing on the petition to terminate was not held until approximately 15 months after entry of the plan.

This court held in *B. L.* that the additional time between the fil-

ing of the petition and the date of the hearing satisfied the purpose and intent of the statute. "The time limitation in OCGA § 15-11-81 (b) (4) (C) clearly is designed to give the parent whose rights are subject to termination sufficient time and opportunity to demonstrate his or her ability to comply with the terms of the court's order. That intent was clearly served in this case." 196 Ga. App. at 808.

In this case, the reunification plan was in force by agreement when this proceeding began in the juvenile court, over one year before the filing of the petition to terminate. Appellant was present and represented by counsel at the initial hearing, after which the court entered an order finding that C. D. P. was a deprived child. That order was not appealed. The reunification plan was incorporated by supplemental order into the court's earlier order after appellant refused to comply with the agreed-upon plan.

Appellant also appeared twice before a judicial citizen review panel during this time, and the plan was extensively discussed and modified in some respects in an attempt to accommodate appellant. Appellant had ample time and opportunity to comply with the plan, which continued in existence, with some modifications, throughout the year preceding the filing of the petition. Under these circumstances, the intent of OCGA § 15-11-81 (b) (4) (C) has been served and appellant's first enumeration of error has no merit.

2. Appellant contends that the juvenile court erred in denying his motion to dismiss because one year had not elapsed between filing the reunification plan and filing the petition to terminate, citing *In the Interest of B. L.*, supra, as his sole authority for this contention. As discussed above, that case addresses the consideration of evidence of noncompliance with a reunification plan under OCGA § 15-11-81 (b) (4) (C) (iii). Neither the decision nor the relevant statute mandates dismissal of an action if brought within one year after filing the plan. Moreover, as the juvenile court stated in its order, failure to comply with the plan was not the dispositive factor in the court's decision to terminate appellant's parental rights. See Division 3, infra. Appellant's contention has no merit.

3. Appellant also challenges the sufficiency of the evidence to support the juvenile court's findings under OCGA § 15-11-81 (b). The termination of parental rights under OCGA § 15-11-81 is a two-step process. First, the court determines whether there is clear and convincing evidence of parental misconduct or inability. Second, the court considers whether termination is in the best interest of the child. *In the Interest of G. K. J.*, 187 Ga. App. 443, 444 (3) (370 SE2d 490) (1988). The standard for appellate review of a termination of parental rights is " 'whether a rational trier of fact could have found by clear and convincing evidence that the natural parent's rights had been lost. (Cit.)' [Cit.]" *In the Interest of R. L. H.*, 188 Ga. App. 596,

597 (373 SE2d 666) (1988).

The record shows that C. D. P. is a profoundly disturbed child. He originally was taken into the custody of the Department of Family & Children Services (DFACS) at age two, when appellant stated that he was unable to care for him. Three foster homes in rapid succession requested his removal because of his bizarre behavior, which the juvenile court justifiably likened to that of "an untrained animal."

According to the testimony of several witnesses, C. D. P. was so active and destructive that he required constant one-on-one supervision. He ate razor blades and dog food; bit a piece out of another child's leather shoe, leaving bite marks on the child's foot; bit and tormented the family dog; and sexually acted out with dolls and himself. He seemed oblivious to danger or pain, and did not cry or give any other expression of pain, even when severely cut in the razor blade incident. He was non-verbal except for the words "uh" and "do it," the latter accompanied by pulling at his genitals or attempting to touch others' genitals. The first foster mother testified that in her 11 years of providing foster care, C. D. P. was "unlike any child I have ever had and we have had over 100 children of all ages and he was just very extreme."

C. D. P. ultimately was placed in a fourth foster home, where he had resided for over a year at the time of the hearing. The current foster mother testified that he continued to have behavioral difficulties, and that he was undergoing intensive psychological testing in an attempt to identify and treat his problems. However, there was uncontroverted testimony that his problems were lessening and his overall behavior was improving, although he was still developmentally behind his age group. The DFACS social services specialist attributed this improvement to his feeling of stability in the foster home. Despite his numerous behavior problems, she also testified that he was "highly adoptable" and that "with a lot of structure and a normal environment with some permanency where he can really settle in . . . he could really improve."

Even without considering evidence of appellant's failure to comply with the reunification plan, there is ample support in the record for a termination of parental rights under OCGA § 15-11-81 (b) (4). Witnesses testified that appellant was unable to perform simple tasks such as assisting C. D. P. with eating or keeping him clean. He seemed unable or unwilling to understand instructions. The witnesses testified to a lack of bonding between appellant and C. D. P., and to an inability by appellant to discipline or even to relate to C. D. P. The child was adversely affected by appellant's visitation, trying to leave the room, clinging to the social services worker, and having nightmares and severe diarrhea after each visit. He showed improvement after appellant's visitation was reduced to once a month.

After C. D. P. was placed in the custody of DFACS, appellant withheld the child's Social Security payments and refused to contribute the payments towards C. D. P.'s support. At the hearing, he was often unable or unwilling to respond to questions, and testified on cross-examination that he would lie for $10. Despite the evidence of his inability or unwillingness to care for C. D. P., appellant does not acknowledge that he needs any assistance in learning to care for the child or that he himself needs psychological care. He offered during cross-examination to return C. D. P. to DFACS after a year "free of charge" if he was unable to care for him.

Finally, appellant repeatedly and consistently refused to cooperate with the reunification plan, despite apparent initial agreement. He agreed to participate in parenting classes, but did not care for C. D. P. or attend the parents' discussion groups during the classes. After four weeks of a nine-month program, he left and refused to return. Although appellant agreed on the advice of the judicial citizen review panel to visit a psychologist for testing, he later refused to participate in the tests.

There was some conflict in the evidence with regard to the time at which C. D. P. began to display the speech and behavioral problems observed by the witnesses. Appellant and his sister-in-law gave testimony which could have implicated C. D. P.'s mother, rather than appellant, as the cause of these problems. However, the juvenile court resolved this conflict against appellant. "The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review, here the rational factfinder test, is not met. When we apply that test here we note the conflicting evidence presented to the trial court and conclude that a rational factfinder could have found by clear and convincing evidence parental misconduct or inability as provided by OCGA § 15-11-81 (b)." (Citations and punctuation omitted.) *In the Interest of C. M.,* 194 Ga. App. 503, 504 (1) (391 SE2d 26) (1990).

A finding of parental misconduct or inability is based upon the four factors outlined in OCGA § 15-11-81 (b) (4) (A). The earlier, unappealed order of the juvenile court established that C. D. P. was a deprived child. OCGA § 15-11-81 (b) (4) (A) (i). Given the evidence of appellant's demonstrated inability to care for C. D. P.'s most basic needs, the apparent connection between appellant's contact with C. D. P. and the worsening of the child's emotional state, appellant's withholding of support for C. D. P. and appellant's refusal to participate in programs designed to improve his ability to care for the child, the juvenile court could have found by clear and convincing evidence that the lack of parental care and control was the cause of C. D. P.'s status as deprived. OCGA § 15-11-81 (b) (4) (A) (ii). Finally, in light of C. D. P.'s severe behavioral deficits and need for stability and spe-

cial care, the condition of deprivation was likely to continue and to cause serious physical, mental, emotional, or moral harm. OCGA § 15-11-81 (b) (4) (A) (iii, iv). Under these circumstances, the trial court did not err in terminating the father's parental rights. See *In the Interest of J. C. J.*, 207 Ga. App. 599 (428 SE2d 643) (1993).

*Judgment affirmed. Beasley, P. J., and Cooper, J., concur.*

DECIDED NOVEMBER 19, 1993.

*Jerry W. Moncus*, for appellant.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Teresa E. Lazzaroni, Staff Attorney, David T. Blackburn, Nancy E. Bradshaw*, for appellee.